No. 26-1066

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

Astro Companies, LLC
*Plaintiff-Appellant*,

v.

WestFax Inc, Duck Dive Communications, LLC, d/b/a JBlast,
Barry Clark, Chad Matheson, and John Does 1-10
*Defendant-Appellee*.

---

On Appeal from Order Granting Defendant's Motion to Dismiss, and Order
Denying Astro Companies, LLC Motion to Reconsider
U.S. District Court, Dist. of Colorado No. 23-cv-02328-SKC
The Honorable Kato S. Crews

---

**APPELLANT'S OPENING BRIEF**

---

Ross M. Good (Ross@thegoodlawgroup.com)
THE GOOD LAW GROUP
800 E. Northwest Highway, Suite 814
Palatine, IL 60074
(847) 577-4476 | Fax (800) 709-1179

*Attorney for Appellant*
Astro Companies, LLC

Oral Argument Requested

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ................................................................1

JURISDICTIONAL STATEMENT ................................................................2

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE................................................................3

    I.   The Parties ................................................................3

    II.   Astro's Technology and Business ................................................5

    III.   The Fax Advertising Campaigns................................................7

    IV.   District Court Proceedings ................................................7

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT ................................................................12

    I.   Standard of Review................................................................12

    II.   The District Court Erred in Holding that Astro's Fax Servers Do Not Qualify as a "telephone facsimile machine" under the 47 U.S.C. § 227(A)(3). ...............13

        A.   The Statutory Text Is Unambiguous and Covers Astro's Equipment .......13

        B.   The Sixth Circuit's Holding in Lyngaas Is Directly on Point; Career Counseling Is Distinguishable ................................................................16

        C.   The *Ryerson* Bureau Ruling Is Factually Inapposite to Astro ...................17

        D.   The *Expressio Unius* Canon Does Not Support the District Court's Reading................................................................18

        E.   Legislative History and the Absurd-Results Canon Confirm Coverage....19

    III.   The District Court Failed to Afford Appropriate Respect to the FCC's 2003 Commission Order................................................................21

        A.   The McLaughlin Framework Requires Independent Analysis and Skidmore Respect................................................................22

        B.   Under *Skidmore*, an agency interpretation's persuasive power "will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." ...................23

        C.   The Bureau Level Rulings Fail All Four *Skidmore* Factors ......................24

        D.   WestFax Already Lost This Exact Argument Before the Bureau ............25

        E.   The Internet-Delivery Carve-Out Does Not Apply to Astro ...................26

IV.    The District Court Erred in Resolving Fact Intensive TFM Questions at the Pleading Stage ...........................................................................................27

    A.    Astro's Sworn Allegations Satisfy Each Element of § 227(a)(3)(B).........27

    B.    The TFM Question Is Inherently Factual and Was Resolved by Other Courts Only After Discovery .....................................................................28

    C.    The District Court Made Impermissible Factual Assumptions.................30

V.    The District court Abused Its Discretion Denying Reconsideration and Leave to Replead following *Mclaughlin* ...........................................................31

    A.    The Standard for Reconsideration...........................................................31

    B.    The Original Dismissal Contained Clear Legal Error...............................31

    C.    McLaughlin Was an Intervening Change in Controlling Law .................32

    D.    The District Court's Procedural Rulings Compounded the Abuse............33

CONCLUSION ....................................................................................................34

STATEMENT OF REASONS FOR ORAL ARGUMENT ..................................35

ADDENDUM — STATUTORY TEXT ...............................................................36

CERTIFICATE OF COMPLIANCE....................................................................37

CERTIFICATE OF SERVICE .............................................................................38

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 281 F.3d 1173 (10th Cir. 2002) .................................................................................................... 13, 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................. 12, 27

*Been v. O.K. Indus., Inc.*, 495 F.3d 1217 (10th Cir. 2007)......................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)..............................................27

*Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 1125 (10th Cir. 2014)..12

*Burgess v. United States*, 553 U.S. 124, (2008) ......................................................15

*Career Counseling, Inc. v. AmeriFactors Financial Group, LLC*, 91 F.4th 202 (4th Cir. 2024).............................................................................. 6, 12, 29

*Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 09-CV-1162, 2013 WL 3654550 (W.D. Mich. July 12, 2013)....................................................................26

*Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581 (E.D. Mo. 2023)....................................................................................16

*Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021) .......................................................14

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ................................21

*Garcia v. United States*, 469 U.S. 70 (1984) ...........................................................20

*Georgia Power Co. v. Teleport Comm'n Atlanta*, 346 F.3d 1047 (11th Cir. 2003)26

*Gonzales v. Oregon*, 546 U.S. 243 (2006)................................................................23

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ........................................22

*Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021)............................. 15, 16, 29

*Marc Irwin Sharfman M.D. P.A. v. Precision Imaging St. Augustine LLC*, No. 24-13315 (11th Cir.) ....................................................................................32

*Marx v. General Revenue Corp.*, 568 U.S. 371 (2013) ............................................19

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) .1, 3, 8, 32

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368(2012) ...............................................2

*N.L.R.B. v. SW General, Inc.*, 580 U.S. 288 (2017)..................................................19

*Panzarella v. Navient Sols., Inc.*, 37 F.4th 867 (3d Cir. 2022)................................14

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1 (2019) ....22

*Servants of the Paraclete v. Does*, 204 F.3d 1005 (10th Cir. 2000)................. 13, 31

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ........................................ 11, 22, 25

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...........................................................30

*True Health Chiropractic, Inc. v. McKesson Corp.*, (9th Cir. 2023) .......................1

*True Health Chiropractic, Inc. v. McKesson Corp.*, No. 4:13-cv-02219-HSG (N.D. Cal.) ............................................................................................33

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) ............21

*Vette v. Sanders*, 989 F.3d 1154 (10th Cir. 2021) .................................................30

**Regulations**
*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18
    FCC Rcd 14014 (2003) ................................................................... 23, 26
*WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd 8620 .......25


**Statutes**
28 U.S.C. § 1291 ....................................................................................................2
28 U.S.C. § 1331 ....................................................................................................2
47 U.S.C. § 227 ......................................................................................................2
47 U.S.C. § 227(a)(3)...................................... 2, 3, 9, 12, 13, 14, 16, 19, 27, 35, 36
47 U.S.C. § 227(b)(1)(C) ........................................................... 14, 18, 36

**Legislative Materials**
H.R. Rep. No. 102-317 at 25-26 (1991) ...............................................................20

**Administrative Rulings**
*In re Amerifactors Financial Group, LLC,* 34 FCC Rcd 11950 (CGAB December
    9, 2019) ...................................................................................................6, 24
*Joseph T. Ryerson & Son, Inc*., DA-20-1038 (CGAB Sept. 4, 2020) .......... 6, 12, 18

**Federal Rules**
Fed. R. App. P. 4(a)(1)(A) ....................................................................................2
Fed. R. Civ. P. 12(b)(2)........................................................................................7
Fed. R. Civ. P. 12(b)(6)........................................................................................8

## GLOSSARY

2003 Commission Order — In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd 14014 (2003)

Amerifactors Bureau Ruling — In re Amerifactors Financial Group, LLC, Petition for Declaratory Ruling, 34 FCC Rcd 11950 (CGAB December 9, 2019)

FAC — First Amended Complaint (ECF No. 10)

FCC — Federal Communications Commission

CGAB — Consumer and Governmental Affairs Bureau of FCC

TCPA — Telephone Consumer Protection Act, 47 U.S.C. § 227

TFM — Telephone Facsimile Machine (as defined in 47 U.S.C. § 227(a)(3))

Ryerson Bureau Ruling — In re Joseph T. Ryerson & Son, Inc., Petition for Declaratory Ruling, DA-20-1038 (Chief, CGAB Sept. 4, 2020)

WestFax Ruling — In re WestFax, Inc. Petition for Consideration & Clarification, 30 FCC Rcd 8620 (CGAB Aug. 28, 2015)

## STATEMENT OF RELATED CASES

*True Health Chiropractic, Inc. v. McKesson Corp.*, No. 22-15710 (9th Cir. Oct. 25, 2023), *rev'd and remanded sub nom*. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). The Supreme Court's reversal in *McLaughlin*, which arose directly from that case, controls the issues presented in this appeal. On remand, the Ninth Circuit remanded to that district court for further proceedings consistent with *McLaughlin* (Aug. 12, 2025). As of the filing of this brief, that district court is considering a Second Renewed Motion for Class Certification (filed Oct. 24, 2025) applying the *McLaughlin*/*Skidmore* framework to re-evaluate the same *Amerifactors* ruling relied upon by the district court below. No ruling has issued.

Appellant is not aware of any other prior or related appeals.

1

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Astro's claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227. Federal courts have jurisdiction over private TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court's February 12, 2025 Order and accompanying Judgment (App. Vol. 1 at 8777, 8786) constitute a final decision disposing of all claims as to all parties with prejudice.

The district court denied Astro's timely Motion for Reconsideration on February 9, 2026 (App. Vol. 1 at 9043). Astro filed its Notice of Appeal on March 6, 2026 (App. Vol. 1 at 9047), within the 30-day period prescribed by Fed. R. App. P. 4(a)(1)(A). This appeal is timely.

## STATEMENT OF THE ISSUES

1.      Did the district court err in holding that Astro's fax servers, equipment that receives electronic signals over regular telephone lines and has the sworn capacity to transcribe them onto paper, do not qualify as a "telephone facsimile machine" under 47 U.S.C. § 227(a)(3), where: (1) the statutory text defines that term as any "equipment" with the "capacity" to perform those functions; (2) the Sixth Circuit has so held; (3) the FCC's 2003 Commission Order expressly covers

2

fax servers;  and (4) excluding such equipment produces absurd results? *(Standard of Review: De Novo)*

2. Did the district court err in affording exclusive weight to two subordinate Bureau-level FCC rulings while ignoring the full Commission's 2003 Order, which expressly holds fax servers are covered by § 227(a)(3), thereby failing to afford the "appropriate respect" to FCC rulings required by *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)? *(Standard of Review: De Novo)*

3. Did the district court err in resolving the inherently fact-intensive question of whether Astro's equipment qualifies as a "telephone facsimile machine" at the pleading stage, before any discovery, against Astro's sworn and unrebutted technical allegations? *(Standard of Review: De Novo)*

4. Did the district court abuse its discretion in denying Astro's motion for reconsideration, and refusing leave to replead, where *McLaughlin* was decided by the Supreme Court while the motion was pending and directly repudiated the framework the district court applied? *(Standard of Review: Abuse of Discretion)*

## STATEMENT OF THE CASE

### I. The Parties

Appellant, Astro Companies, LLC, is a Florida limited liability company that provides fax infrastructure to businesses, including healthcare providers.

3

Astro owns and operates its own server hardware, software, and telephone services upon which the faxes at issue were received. (Declaration of Mike Ray "Ray Decl." ¶ 4, App. Vol. 1 at 8762.) Astro is the owner of its own equipment and is the end user of the fax numbers and receiving infrastructure at issue and is not, and has never been, a subscriber to any online fax service. (App. Vol. 1 at 18, 8763.) Astro is the subscriber for each phone line that was sent the faxes at issue in this case. (App. Vol. 1 at 18.) Astro is not a fax broadcaster and has never engaged in fax broadcasting campaigns of any kind. (App. Vol. 1 at 8763.)

Appellee, WestFax, Inc. ("WestFax"), is a Colorado corporation headquartered in Denver that provides commercial fax broadcasting services to business customers, including the transmission of high-volume unsolicited fax advertising campaigns. (App. Vol. 1 at 16; WestFax Corporate Disclosure Statement, ECF No. 13.) WestFax has been described as operating one of the largest junk fax operations in the United States with the capacity to send over 1,000,000 junk faxes per day. (App. Vol. 1 at 17.)

Duck Dive Communications LLC d/b/a JBlast ("Duck Dive") is a Delaware LLC operated wholly owned by WestFax and operated by Barry Clark. (Corporate Disclosure Statement of Duck Dive, ECF No. 14.) Duck Dive provides fax broadcasting services under the JBlast brand, operating exclusively through WestFax's Colorado infrastructure. (App. Vol. 1 at 16, 17.)

4

Appellee Barry Clark ("Clark") is the founder and principal officer of WestFax and the owner of Duck Dive through his ownership of WestFax. (App. Vol. 1 at 27.)

Appellee Chad Matheson ("Matheson") is a WestFax Systems Architect who, at Clark's direction, compiled a database of 6,229,596 fax numbers, including Astro's, from WestFax's own records and provided that database to Coast Credit, a WestFax customer, for use in its fax advertising campaign. (App. Vol. 1 at 27, 34-35.)

## II.   Astro's Technology and Business

The following technical facts are sworn to under penalty of perjury by Astro's Managing Partner, Mike Ray, and remain unrebutted:

1. Astro owns and operates the server hardware, software, and telephone services upon which the faxes at issue were received. (Ray Decl. ¶ 4, App. Vol. 1 at 8763.)

2. Astro's servers all have the capacity to print. (Ray Decl. ¶ 5, App. Vol. 1 at 8763.)

3. Astro is not, and has never been, a subscriber to any online fax service. (Ray Decl. ¶ 6, App. Vol. 1 at 8763.)

4. Astro has never engaged in mass fax broadcasting of any kind. (Ray Decl. ¶ 7, App. Vol. 1 at 8763.)

5. Astro was the owner of the fax numbers at issue when the faxes were received, and was the end user. (Ray Decl. ¶ 1, App. Vol. 1 at 8762.)

6. Astro is in possession of the actual faxes received on the telephone numbers it owned. (Ray Decl. ¶ 2, App. Vol. 1 at 8762.)

7. Faxes received by a customer of Astro's are the property of that customer and are not delivered to Astro. (Ray Decl. ¶ 3, App. Vol. 1 at 8762.)

These sworn, unrebutted facts establish that Astro is the owner and operator of the receiving infrastructure, the servers themselves not a subscriber to a third-party online fax service that delivers faxes as email over the Internet. This factual distinction is dispositive: it places Astro squarely within the coverage of the FCC's 2003 Commission Order and outside the holdings of *Career Counseling, Inc. v. AmeriFactors Financial Group, LLC*, 91 F.4th 202 (4th Cir. 2024) (subscriber to third-party service and faxes received as Internet email), *In re Joseph T. Ryerson & Son, Inc.*, DA-20-1038 (CGAB Sept. 4, 2020) (the *Ryerson* Bureau Ruling)(transmission originated as digital web upload; received as email through cloud service), and *In re Amerifactors Financial Group, LLC,* 34 FCC Rcd 11950 (CGAB December 9, 2019) (the *Amerifactors* Bureau Ruling) (relied upon by the

6

*Ryerson* Bureau Ruling and also addressing faxes sent  as Internet email), none of which reflect Astro's facts.

### III.    The Fax Advertising Campaigns

Between January 28, 2021, and June 22, 2023, Coast Credit contracted with WestFax and Duck Dive to send fax advertisements. (App. Vol. 1 at 24.) Using the fax number database compiled and supplied by Matheson, drawn from WestFax's own customer records, (App. Vol. 1 at 24.) Appellees sent 8,579 unsolicited fax advertisements to telephone numbers owned by Astro. (App. Vol. 1 at 24.) WestFax also sent its own fax advertisement to Astro. (App. Vol. 1 at 21.)

These "blasts" of junk faxes consumed Astro's telecommunications and IT resources, filled all available server capacity, and prevented receipt of legitimate faxes. (App. Vol. 1 at 24, 8763.) Astro's servers received the faxes as electronic signals transmitted over regular telephone lines, not over the Internet, and Astro's servers all have the capacity to print. (App. Vol. 1 at 8763) Astro did not provide prior express invitation or permission to receive these faxes. (App. Vol. 1 at 17, 20, 21, 8763.)

### IV.    District Court Proceedings

Astro filed suit September 11, 2023 (ECF No. 1) and filed a First Amended Complaint on December 21, 2023 (ECF No. 10). Each Appellee moved to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6). (App. Vol. 1 at 8627, 8643, 8663,

8713.) Discovery was stayed pending resolution of those motions. On February 12, 2025, the district court granted Matheson's motion to dismiss for failure to state a claim. The district court characterized Astro as an "online fax service provider" and held that such an entity does not qualify as a "telephone facsimile machine" under § 227(a)(3) and therefore cannot state a TCPA claim.

On March 7, 2025, Astro moved for reconsideration. (App. Vol. 1 at 8788.) On June 30, 2025, Astro filed a Notice of Supplemental Authority advising the district court of the Supreme Court's decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.,* 606 U.S. 146 (2025), and requested leave to file either a renewed motion for reconsideration or an amended complaint consistent with that intervening authority. (App. Vol. 1 at 8998.)

On February 9, 2026, the district court denied reconsideration. (App. Vol. 1 at 9043.) The court articulated three grounds: (1) McLaughlin confirmed that district courts may conduct independent statutory interpretation, which the court asserted it had already done; (2) the district court claimed it had not relied on *Amerifactors* as binding, but had conducted its own plain-text analysis; and (3) Astro's statutory arguments were, or could have been, raised on the original motion to dismiss. Despite Astro's Notice of Supplemental Authority expressly identifying McLaughlin as an intervening change in controlling law, the district court stated that no such change had been cited. (App. Vol. 1 at 9043.) In a

8

footnote, the district court acknowledged the Notice of Supplemental Authority, but denied Astro's request for leave to file a renewed motion or amended complaint on the procedural ground that such a request must be made by separate motion. (App. Vol. 1 at 9046.)

Astro timely appealed on March 6, 2026. (App. Vol. 1 at 9047.)

## SUMMARY OF ARGUMENT

The district court dismissed Astro's TCPA claim on a single ground — that Astro's fax servers do not qualify as a "telephone facsimile machine" under 47 U.S.C. § 227(a)(3), and Astro is therefore not entitled to protection from "junk faxes" pursuant to the TCPA. The court's dismissal of Astro's claim is erroneous for the following reasons.

*First*, the district court's interpretation of the definition of "telephone facsimile machine" is contrary to the unambiguous plain language of the statute and runs afoul of Congressional intent. Rather than adhering to the plain text, the district court tinkered with it, bending the statute toward its own conclusions. The TCPA defines "telephone facsimile machine" as "equipment" with the "capacity" to receive electronic signals over telephone lines and transcribe them onto paper – not as a "machine" that "prints" the faxes. Astro's servers satisfy both elements, and the district court ignored the unambiguous terms used in the definition.

The district court also rejected a Sixth Circuit case that adhered to the plain language and relied instead upon a Fourth Circuit case that excluded equipment on facts that are materially distinguishable from those herein. It also relied upon a declaratory ruling issued by a subordinate Bureau that not only lacks the authority to issue final orders but also put forth an interpretation of the statute that is legally unsound. Moreover, the equipment at issue in that ruling was factually distinguishable from Astro's equipment and the plaintiff, unlike Astro, was a subscriber to an online fax service and not the owner of the equipment. The district court also relied upon the *Expressio Unius* canon to suggest that because a different section of the TCPA includes computers and other devices as potential senders but only mentions "telephone facsimile machines" as recipients, that term should be interpreted to limit recipients to traditional fax machines. To the contrary, the statute's use of the phrase "*any* equipment" in the definition of "telephone facsimile machine" indicates a clear intent to expand the protections afforded to recipients. Indeed, the legislative history reveals an unambiguous purpose – to protect recipients of junk faxes from the interference, interruptions, and expense caused by those transmissions. Moreover, the district court's interpretation would lead to the absurd result of effectively eviscerating the protections afforded by the TCPA for all but a few recipients.

*Second*, the district court's ruling is in error because it fails to afford appropriate respect to FCC rulings. Under the framework recently established by the Supreme Court in *McLaughlin v. McKesson,* the district court must afford "appropriate respect" to agency rulings based on their power to persuade. Persuasive power, pursuant to the Supreme Court's in *Skidmore v. Swift,* depends primarily upon the thoroughness of a ruling, the validity of the reasoning, and its consistency with other rulings. The only ruling entitled to "appropriate respect" is the 2003 Order issued by the full FCC – an order not even mentioned by the district court. That Order held that Congress could not have intended to allow easy circumvention of its prohibition simply because faxes are transmitted to computers or fax servers instead of traditional stand-alone facsimile machines. By contrast, the subordinate Bureau rulings relied upon by the district court do not arise out of the thorough rulemaking process followed by the full Commission, they lack valid reasoning, and they directly contradict the FCC's 2003 order. Moreover, in 2015, the full FCC ruled against Appellee Westfax on this very issue. As Westfax never sought review of that ruling, it is final and Westfax is precluded from relitigating it in federal court. Lastly, the narrow carve-out in the TCPA excluding from protection "facsimile messages sent as email over the Internet" does not apply to Astro. The carve-out exempts only the forwarding of a received fax by email, not the initial transmission of the fax over a telephone line.

*Third,* the district court's dismissal with prejudice was improper as it prematurely resolved fact intensive questions on a motion to dismiss. Astro alleged facts sufficient to make a plausible claim, in accordance with Rule 12(b)(6) standards. The issue at bar turns on technical facts that cannot be resolved on bare pleadings. Yet, the district court resolved it against Astro's sworn, unrebutted allegations without any discovery, without accepting those allegations as true, and without the factual development other courts required before resolving the issue.

*Fourth,* the district court abused its discretion by (1) denying reconsideration of demonstrable legal errors; and (2) finding that *McLaughlin*, a Supreme Court decision issued while the motion was pending that directly repudiated the district court's analytical framework, did not constitute an intervening change in controlling law. The district court denied Astro any meaningful opportunity to be heard on the most significant change in TCPA law in years.

## ARGUMENT

### I.    Standard of Review

This Court reviews a grant of Rule 12(b)(6) motion to dismiss de novo, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in Astro's favor. *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Statutory interpretation is reviewed de novo. *Been v. O.K. Indus., Inc.*, 495

F.3d 1217, 1227 (10th Cir. 2007). Denial of a motion for reconsideration under Rule 59(e) is reviewed for abuse of discretion. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

**II.  The District Court Erred in Holding that Astro's Fax Servers Do Not Qualify as a "telephone facsimile machine" under the 47 U.S.C. § 227(A)(3).**

The district court's dismissal rests on a single, fatal statutory error: it rewrote § 227(a)(3) by (1) importing the word "machine" which appears in the defined term but not in the definition, and (2) requiring that equipment actually print faxes rather than merely have the capacity to do so. Neither rewrite is textually defensible. Because Astro's fax servers satisfy the statute's plain terms as written, the dismissal must be reversed.

**A. The Statutory Text Is Unambiguous and Covers Astro's Equipment**

Statutory interpretation begins and often ends with the plain language. *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1227 (10th Cir. 2007); *see also  Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 281 F.3d 1173, 1178 (10th Cir. 2002) ("A statute clear and unambiguous on its face must be interpreted according to its plain meaning.").

The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited

13

advertisement." 47 U.S.C. § 227(b)(1)(C). The statute defines "telephone facsimile machine" as:

> *equipment* which has the *capacity* — (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line; or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

47 U.S.C. § 227(a)(3) (emphasis added).

Two words control: "equipment" and "capacity." Astro's servers are "equipment." In other words, "equipment" does not refer to a single device, and, at the time the TCPA was enacted in 1991, encompassed multiple devices. *See Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 872 (3d Cir. 2022) ("For an undefined term such as 'equipment,' we seek to determine its plain meaning at the time of the TCPA's enactment…Accordingly, as ordinarily understood, equipment could constitute several discrete objects that, together, served a single purpose."). Astro's servers receive electronic signals over regular telephone lines and have the capacity to transcribe those signals onto paper. (App. Vol. 1 at 8763.) That is the entirety of the statutory test under § 227(a)(3)(B). Astro's equipment satisfies it.

The Supreme Court has confirmed that "capacity" in the TCPA means present functional capacity — not speculative future potential. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021) (construing § 227(a)(1)'s "capacity" language regarding the definition of an autodialer as "the capacity to use a random or sequential

14

number generator to either store or produce phone numbers to be called.").

Similarly, Astro's sworn declaration that its servers presently have the capacity to print is precisely what § 227(a)(3)(B) requires. Present, demonstrated capability is sufficient pursuant to the statutory text.

The district court avoided this conclusion by committing two textual errors. First, it imported the word "machine" from the phrase "telephone facsimile machine" — the term being defined — into the definition itself, then used a dictionary definition of "machine" to exclude Astro's servers. (App. Vol. 1 at 8781-8782.)  But the word "machine" does not appear anywhere in § 227(a)(3). The definition uses "equipment." Courts do not import undefined words from a defined term into the definition itself. *See Burgess v. United States*, 553 U.S. 124, 129-130 (2008) ("statutory definitions control the meaning of statutory words"). Second, the district court required that Astro's equipment actually print faxes, not merely have the capacity to do so. But the statute says "capacity to transcribe . . . onto paper" — not "does transcribe." The Sixth Circuit recognized this distinction as dispositive: "The statutory definition…encompasses more than a traditional fax machine. Notably, it does not require the actual printing of the advertisement." *Lyngaas v. Curaden AG*, 992 F.3d 412, 427 (6th Cir. 2021).

15

**B. The Sixth Circuit's Holding in Lyngaas Is Directly on Point;
Career Counseling Is Distinguishable**

The Sixth Circuit addressed the identical statutory question and held that the definition of "telephone facsimile machine" is unambiguous and "encompasses more than a traditional fax machine." *Lyngaas*, 992 F.3d at 427. The court held that: (1) the definition does not require actual printing; (2) "equipment" is not limited to a single device; and (3) "Congress presumably understood that a computer, as a stand-alone device, can be distinct from a telephone facsimile machine and yet part of one as an integrated piece of 'equipment.'" *Id.* at 427; *see also Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 589 (E.D. Mo. 2023) (same).

The district court dismissed *Lyngaas* as inapt because it addressed computers, not online fax services. (App. Vol. 1 at 8780.) That distinction collapses on inspection. Astro is not an "online fax service" in the sense the district court used that term. (App. Vol. 1 at 8781.) Astro is not, and has never been, a subscriber to any online fax service; Astro is the owner of its own equipment and is the end user of the fax numbers and receiving infrastructure at issue. (App. Vol. 1 at 18, 8763) Astro is the subscriber for each phone line that was sent the faxes at issue in this case. (App. Vol. 1 at 18 .) The district court's distinction has no textual basis in § 227(a)(3).

16

The district court's reliance on *Career Counseling* was in error. *Career Counseling* is distinguishable on three independently dispositive grounds: (1) those recipients subscribed to a third-party eFax service; (2) received faxes as email over the Internet; and (3) made no allegation of capacity to print. In contrast, Astro: (1) owns and operates its own servers; (2) received signals over regular telephone lines; and (3) servers have sworn capacity to print.

Every factual premise of the *Career Counseling* holding is absent here. Moreover, in *Career Counseling* discovery regarding the status as a subscriber was established through eight years of discovery, not assumed from the complaint. The district court assumed the identical disqualifying facts about Astro despite sworn allegations to the contrary.

### C. The *Ryerson* Bureau Ruling Is Factually Inapposite to Astro

The district court also relied on the *Ryerson* Bureau Ruling. That ruling is factually inapposite to Astro's case. In *Ryerson* Bureau Ruling, a company employee uploaded a digital file to a web portal managed by a third-party communications service. The uploaded file was routed electronically through that portal to the recipient's cloud account, where it was received as email. The Bureau found the transmission "not subject to the TCPA" because it (1) originated as a digital electronic file — not a traditional fax; (2) was transmitted through a third-party web portal; and (3) was received as email through a cloud service that

17

"effectively receives faxes sent as email over the Internet." *Ryerson* Bureau Ruling at 3-4. Astro's facts are the opposite as those in the *Ryerson* Bureau Ruling. Astro's servers received traditional fax transmissions sent as faxes over regular telephone lines to telephone numbers paid for by Astro, on Astro's own server hardware that has the capacity to print. (App. Vol. 1 at 8762, 8763.) The *Ryerson* Bureau Ruling's entire rationale rested on a finding that the relevant transmission was "effectively email over the Internet" — a predicate that is factually impossible on Astro's record. *Ryerson* Bureau Ruling provides no basis for excluding Astro from TCPA coverage. In fact, in the *Ryerson* Bureau Ruling, the Bureau explicitly recognized, based upon the full FCC's ruling in 2003, that when the receiving equipment can transcribe a fax onto paper, it would remain within the scope of the TCPA. *Ryerson* Bureau Ruling at 5. In contrast to the cloud-based service at issue in the *Ryerson* Bureau Ruling, Astro's equipment has the capacity to transcribe a fax onto paper and is therefore covered.  (App. Vol. 1 at 8762, 8763).

### D. The *Expressio Unius* Canon Does Not Support the District Court's Reading

The district court invoked *expressio unius est exclusio alterius* to argue that because § 227(b)(1)(C) lists computers and other devices as potential senders but mentions only "telephone facsimile machines" as recipients, Congress meant to limit recipients to traditional fax machines. (App. Vol. 1 at 8781, 8782.) That canon is inapplicable here.

*Expressio unius* "does not apply if there are contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion." *Marx v. General Revenue Corp.*, 568 U.S. 371, 380 (2013) (citations omitted). The "contrary indication" here is in the statute itself: § 227(a)(3) defines 'telephone facsimile machine' as any 'equipment' with the relevant capacity. Congress's use of "any" is an affirmative expansion, not a limitation. *See N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 302 (2017) (*expressio unius* applies only when "circumstances support a sensible inference that the term left out must have been meant to be excluded"). Given technological advances since the TCPA's 1991 enactment, limiting its protections to only those who still use stand-alone fax machines would render the TCPA, and the harms it was enacted to address, irrelevant.

### E. Legislative History and the Absurd-Results Canon Confirm Coverage

Even if § 227(a)(3) were ambiguous — it is not — both the legislative history and the absurd-results canon confirm that fax servers are covered. Courts may look to "the purpose behind the statute" to decode ambiguous text. *In re Geneva Steel* 281 F.3d at 1178. The purpose here is unambiguous.

The district court focused only on the House Report's reference to ink and paper costs and glossed over the language indicating that the costs of ink and paper were not the only concerns. Noting several harms resulting from junk faxes, the

19

House Report stated: "[i]n addition to the costs associated with the fax advertisements, when a facsimile machine is receiving a fax, it may require several minutes or more to process and print the advertisement. During that time, *the fax machine is unable to process actual business communications*." H.R. Rep. No. 102-317 at 25 (1991). (emphasis supplied). As the FCC explained, in examining the House Report, "Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines." 2003 Commission Order ¶ 201. The House Report directly addresses Astro's fax servers and the harms Astro alleged and confirms that Congress intended them to be covered. (App. Vol. 1 at 18, 21, 24, 8763.)

The district court's reliance on isolated passages about ink and paper costs contravenes the settled rule that "[t]he authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill," and that courts may not rely on "snippets" while ignoring what the full Report says. *Garcia v. United States*, 469 U.S. 70, 76 (1984). The same Committee Report the district court cited states in the next sentence that Congress was concerned with the "interference, interruptions and expense that junk fax have placed upon" businesses, harms that Astro's sworn allegations satisfy regardless of whether printing is automatic. H.R. Rep. No. 102-317 at 25-26 (1991).

The absurd-results canon independently forecloses the district court's reading. Under the court's holding, WestFax could send 8,579 junk faxes to a hospital's fax server, consuming all available server capacity and blocking time-sensitive patient care communications for hours, with complete TCPA immunity, simply because the hospital does not use a standalone machine. Congress enacted the TCPA to prevent precisely this harm. H.R. Rep. No. 102-317 at 25. The district court's interpretation does not limit the TCPA, it eviscerates it.

The TCPA is a remedial statute whose terms "should be construed in accordance with [its consumer-protective] purpose." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1047 (9th Cir. 2017). Even setting aside the plain text, both the legislative history and the absurd-results canon confirm coverage, and any residual ambiguity must be resolved in Astro's favor. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) ("Because the TCPA is a remedial statute, it should be construed to benefit consumers.").

### III.    The District Court Failed to Afford Appropriate Respect to the FCC's 2003 Commission Order

The district court compounded its plain-language error by applying a flawed agency-deference framework. Under *McLaughlin*, a district court must afford "appropriate respect," under the *Skidmore* standard, to agency rulings based on their power to persuade. *McLaughlin*, 606 U.S. at 155 (citing *Loper Bright Enters.*

21

Appellate Case: 26-1066   Document: 18   Date Filed: 04/28/2026   Page: 28

*v. Raimondo*, 603 U.S. 369, 402 (2024)). The district court inverted this framework: it credited two subordinate Bureau-level rulings while completely ignoring the full Commission's 2003 Order.

### A. The McLaughlin Framework Requires Independent Analysis and Skidmore Respect

In McLaughlin, the Supreme Court reversed the Ninth Circuit's holding that district courts are bound by FCC TCPA interpretations via the Hobbs Act. *McLaughlin*, 606 U.S. at 150-55. The Supreme Court held that district courts must conduct independent statutory analysis and afford agency interpretations only "appropriate respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) — not *Chevron* deference[1]. Prior to *McLaughlin*, courts cited *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1 (2019), which raised but did not resolve the Hobbs Act question. *McLaughlin* settled it definitively: district courts must independently assess statutory meaning, consistent with *Loper Bright,* which eliminated *Chevron* deference. *Loper Bright,* 603 U.S. at 412.

---

[1] In 1984, the Supreme Court established the principle, known as "Chevron deference," whereby courts must defer to agency interpretations of statutes when the statutory language is ambiguous. *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). In *Loper Bright*, the Supreme Court ended Chevron deference, giving courts the power to independently determine statutory meaning.

22

**B. Under *Skidmore*, an agency interpretation's persuasive power "will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade."**

The district court's opinion does not mention the 2003 Commission Order. (App. Vol. 1 at 8777.) That omission alone is reversible error. In the 2003 Commission Order, the full FCC, not merely a subordinate Bureau, expressly held:

> The TCPA's definition of 'telephone facsimile machine' broadly applies to any equipment that has the capacity to send or receive text or images. The purpose of the requirement that a 'telephone facsimile machine' have the 'capacity to transcribe text or images' is to ensure that the prohibition on unsolicited faxing not be circumvented. Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines.

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014 ¶ 201 (2003) ("2003 Commission Order"). The Commission further held that "[b]ecause a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine or to one associated with a personal computer or fax server, it would make little sense to apply different rules based on the device that ultimately received it." *Id*. ¶ 202.

Under any *Skidmore* analysis, the 2003 Commission Order commands "appropriate respect": it was issued by the full Commission after notice-and-

23

comment rulemaking, addresses the precise question presented; its reasoning is thorough and internally consistent; and it is consistent with the plain text and legislative history of § 227(a)(3).

### C. The Bureau Level Rulings Fail All Four *Skidmore* Factors

The *Amerifactors* and *Ryerson* Bureau Rulings, the only authorities the district court applied, fail every factor prescribed by *Skidmore*, 323 at 140:

(1) "*[T]horoughness evident in its consideration*"

The 2003 Order followed notice-and-comment rulemaking with extensive public participation. The *Amerifactors* Bureau Ruling was a staff-level adjudication without rulemaking. The *Ryerson* Bureau Ruling incorporated *Amerifactors* by reference without independent analysis, stating only that "Ryerson's technology is similar to the technology the Bureau addressed in *Amerifactors*." *Ryerson* Bureau Ruling at 3.

(2) "*[T]he validity of reasoning*"

The 2003 Order's circumvention-prevention rationale is analytically sound. *Amerifactors* reached the opposite conclusion based on a reading that writes "any" and "capacity" out of the statute. *Ryerson* rests entirely on facts inapplicable to Astro.

(3) "*[C]onsistency with earlier pronouncements*"

24

*Amerifactors* and *Ryerson* directly contradict the 2003 Commission Order issued by the same agency. Inconsistency with prior pronouncements is a reason to withhold Skidmore respect.

(4) "*[F]*actors which give it power to persuade, if lacking power to control"

The 2003 Order was issued by the full Commission; *Amerifactors* and *Ryerson* were issued by a subordinate Bureau. When they conflict, the Commission Order controls.

### D. WestFax Already Lost This Exact Argument Before the Bureau

Appellee WestFax itself petitioned the FCC's Bureau in 2015 for a ruling that fax servers are not covered by § 227(a)(3) — and lost. *In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd 8620 ¶ 9 (CGAB Aug. 28, 2015). The Bureau reasoned that because efaxes, as defined by WestFax, were sent over telephone lines, it satisfied "the statutory requirement that the communication be a fax on the originating end." *Id*. at 8623 ¶ 9. And the "statutory requirements to be a fax on the receiving end" were satisfied because "[t]he definition of 'telephone facsimile machine' sweeps in the fax server and modem, along with the computer that receives the efax because together they by necessity have the capacity to 'transcribe text or images (or both) from an electronic signal received over a telephone line onto paper.'" *Id*., *citing* 47 C.F.R. § 64.1200(f)(14)).

WestFax did not seek Commission review of that ruling. As such, the ruling is final. *See Georgia Power Co. v. Teleport Comm'n Atlanta*, 346 F.3d 1047, 1050 (11th Cir. 2003) (order from a subordinate unit of the FCC (such as the Bureau) becomes final if no application for review before the Commission is filed). Having sought and received a final ruling on this exact issue and lost, WestFax cannot relitigate the question in federal court.

### E.  The Internet-Delivery Carve-Out Does Not Apply to Astro

The 2003 Commission Order contains a narrow carve-out: the TCPA does not apply "to facsimile messages sent as email over the Internet." 2003 Commission Order ¶ 200. This exempts only the forwarding of a fax received by email, not the initial transmission of the fax over a telephone line. *See Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc*., No. 09-CV-1162, 2013 WL 3654550, at \*5 (W.D. Mich. July 12, 2013) ("although unsolicited faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers do fall within the TCPA's prohibitions, that prohibition does not extend to facsimile messages sent as email over the Internet."). Astro's servers receive the original fax transmissions over regular telephone lines, not as email forwarded over the Internet. (App. Vol. 1 at 8763.) The carve-out is inapplicable. The factual predicate of both *Career Counseling* and *Ryerson,* that the transmission was "effectively email over the Internet," is entirely absent in Astro's case.

26

## IV. The District Court Erred in Resolving Fact Intensive TFM Questions at the Pleading Stage

Even if the TFM question were a close call on the merits — it is not — the district court could not resolve it on a Rule 12(b)(6) motion against Astro's sworn, unrebutted technical allegations. The district court's dismissal violated the basic *Iqbal*/*Twombly* pleading standard and the principle that fact-intensive technical questions require factual development.

### A. Astro's Sworn Allegations Satisfy Each Element of § 227(a)(3)(B)

On a Rule 12(b)(6) motion, the district court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences in [Astro's] favor." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Astro need only allege facts sufficient to make a plausible claim. *Iqbal*, 556 U.S. at 678.

Section 227(a)(3)(B) has three elements: (1) "equipment"; (2) that has "the capacity to transcribe text or images (or both)"; (3) "from an electronic signal received over a regular telephone line onto paper." Astro's sworn allegations satisfy each element with particularity:

*Element 1 — Equipment.*

27

Astro "owns and operates the resources (including but not limited to server hardware, software and telephone services) upon which the faxes at issue were received." (App. Vol. 1 at 8763.)

*Element 2 —Capacity to transcribe onto paper.*

"Astro's servers that received the faxes at issue in this case all have the capacity to print." (App. Vol. 1 at 8763.)

*Element 3: Electronic signal over regular telephone line.*

The servers received faxes "as electronic signals transmitted over regular telephone lines." (App. Vol. 1 at 18.)

These three sworn allegations track every element of § 227(a)(3)(B). Astro's sworn allegations are specific, unrebutted, and required to be accepted as true. Nothing more is required at the pleading stage.

### B. The TFM Question Is Inherently Factual and Was Resolved by Other Courts Only After Discovery

The question of whether specific equipment qualifies as a "telephone facsimile machine" depends on three technical facts: (1) how the equipment receives fax signals; (2) over what kind of connection (telephone line vs. Internet); and (3) its capacity to produce paper output. Both circuits to have addressed this question reached their conclusions only after full factual development. First, *Lyngaas* was decided after a trial on the merits. 992 F.3d at 419. Second, *Career Counseling* was decided after eight years of litigation and summary judgment. 91

F.4th 202. The key disqualifying fact that the plaintiff subscribed to a third-party eFax service and received faxes as email was established through discovery, not assumed. *Id.* The district court applied *Career Counseling's* summary-judgment-stage factual findings to a Rule 12(b)(6) motion. That is methodologically indefensible.

The Bureau within the FCC that issued the *Amerifactors* Bureau Ruling stated that "[b]y this declaratory ruling, we make clear that an online fax service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper' is not a 'telephone facsimile machine' and thus falls outside the scope of the statutory prohibition." *Amerifactors* Bureau Ruling at ¶ 3. Assuming *arguendo* the court wanted to resolve the TFM Question as to Astro under the *Amerifactors* Bureau Ruling, Astro's claim would survive because Astro owns and operates the server hardware, software, and telephone services upon which the faxes at issue were received and Astro's servers all have the capacity to print. (App. Vol. 1 at 18, 8763.)

## C. The District Court Made Impermissible Factual Assumptions

The core factual distinction, whether Astro is an equipment owner (covered by the 2003 Commission Order) or an internet-email subscriber (excluded), was never established through any discovery. The district court simply assumed Astro was not an equipment owner despite the Ray Declaration expressly stating otherwise. (App. Vol. 1 at 8762.) "To reject testimony because it is unsubstantiated and self-serving is to weigh the strength of the evidence or make credibility determinations…tasks belonging to the trier of fact. Assessing the weight of the evidence is the role of the trier of fact, not the court at summary judgment." *Vette v. Sanders*, 989 F.3d 1154, 1164 (10th Cir. 2021) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (internal quotations omitted).

The district court further erred by declining to address Astro's standing and the substantial-involvement question as to Clark and Matheson. (App. Vol. 1 at 8777.) Whether Astro suffered concrete, particularized injury from server overload and whether Clark's and Matheson's individual direction of the database compilation creates personal TCPA liability, are fact-intensive questions requiring discovery. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

### V.    The District court Abused Its Discretion Denying Reconsideration and Leave to Replead following *Mclaughlin*

The district court abused its discretion in two independently sufficient respects: (1) it refused to correct demonstrable legal errors in the original dismissal; and (2) it refused to recognize *McLaughlin* as an intervening change in controlling law.

### A. The Standard for Reconsideration

A motion for reconsideration is appropriate where: (1) there has been an intervening change in controlling law; (2) new evidence exists that was previously unavailable; or (3) there is a need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). All three grounds are present here.

### B.  The Original Dismissal Contained Clear Legal Error

As shown above, the district court committed demonstrable errors: importing "machine" into the statutory definition; requiring actual (not potential) printing; ignoring the 2003 Commission Order; relying on the factually inapposite *Ryerson* ruling; and misapplying *Career Counseling* to facts it was never meant to reach. Reconsideration to correct clear legal error is appropriate. *Servants of the Paraclete*, 204 F.3d at 1012.

### C. McLaughlin Was an Intervening Change in Controlling Law

The district court's finding that *McLaughlin* did not constitute an "intervening change in controlling law" is flatly wrong. *McLaughlin* overruled the Ninth Circuit's holding that district courts are bound by FCC TCPA interpretations via the Hobbs Act, the same framework the district court applied here. *McLaughlin,* 606 U.S. at 149. It also established that district courts must conduct independent statutory analysis and afford only Skidmore-level "appropriate respect" to agency rulings. *Id.* at 152, 155, 162. Finally, *McLaughlin* reversed and remanded a case dismissed on the same *Amerifactors* ruling the district court relied upon. *Id*. at 148. More than merely clarify existing law, *Mclaughlin* established a new framework now actively reshaping TCPA litigation nationwide. The significance of *McLaughlin* as an intervening change is confirmed by its immediate national impact: courts across multiple circuits are applying its *Skidmore* framework to re-evaluate *Amerifactors* in TCPA fax cases. *See Marc Irwin Sharfman M.D. P.A. v. Precision Imaging St. Augustine LLC*, No. 24-13315 (11th Cir.) (fax-server TFM question briefed and argued after district court denied motion for class certification). That *McLaughlin* triggered circuit-level re-litigation of the identical fax-server question confirms it was an intervening change — not a confirmation of existing law.

32

Indeed, *McLaughlin* is now being fully relitigated under the new framework, with new briefing, a hearing held January 22, 2026, and no ruling yet issued, confirming that *McLaughlin* initiated a wholesale re-evaluation of *Amerifactors*, not mere procedural clarification. *See True Health Chiropractic, Inc. v. McKesson Corp.*, No. 4:13-cv-02219-HSG (N.D. Cal.) (class certification pending 2026).

The district court characterized *McLaughlin* as merely "confirming" its pre-existing authority. (App. Vol. 1 at 9045.) That characterization is insupportable. If the district court truly conducted an independent analysis, it would have addressed the 2003 Commission Order. It never did.

### D. The District Court's Procedural Rulings Compounded the Abuse

The district court refused Astro's request for leave to file a renewed motion or amended complaint on the ground that such requests must be made by separate motion. (App. Vol. 1 at 9046.) That ruling created an impossible trap. The district court sat on Astro's Notice of Supplemental Authority for eight months. (App. Vol. 1 at 8998, 9043.)  Then the district court simultaneously: (1) denied Astro's original motion to reconsider; (2) declined to address McLaughlin substantively; and (3) instructed Astro to file a separate motion, a motion that would have been futile after dismissal with prejudice and denial of reconsideration, and that could not meaningfully have been filed within any remaining post-judgment motion

33

window. *Id.* A party cannot be penalized for the impossibility created by the court's own procedural ruling. Astro was denied any meaningful opportunity to be heard on the most significant change in TCPA law in years.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Astro Companies, LLC respectfully requests that this Court:

(1) Reverse the district court's orders granting Defendants' motions to dismiss (App. Vol. 1 at 8777, 8786) and denying reconsideration (App. Vol. 1 at 9043.)

(2) Remand with instructions to permit Astro to conduct discovery on the telephone facsimile machine question; and

(3) Grant Astro leave to file an amended complaint consistent with *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025).

Respectfully submitted,

/s/Ross M. Good
Ross M. Good, Esq.
The Good Law Group
800 E. Northwest Hwy, Suite 814
Palatine, IL 60074
Phone: (847) 600-9576
Email: ross@thegoodlawgroup.com
Dated: April 28, 2026

**Attorney for Plaintiff Astro Companies, LLC.**

34

## STATEMENT OF REASONS FOR ORAL ARGUMENT

Oral argument would materially assist the Court in resolving this appeal. This case presents questions of first impression in the Tenth Circuit: (1) the proper interpretation of 47 U.S.C. § 227(a)(3)'s definition of "telephone facsimile machine" as applied to modern fax server infrastructure, an issue on which the Sixth and Fourth Circuits have reached different results; and (2) the proper application of the *McLaughlin*/*Skidmore* "appropriate respect" framework to competing FCC rulings of different institutional pedigrees. The factual record, including the significance of Astro's sworn technical declarations, would also benefit from focused questioning.

Argument time requested: 15 minutes per side.

**ADDENDUM — STATUTORY TEXT**

**47 U.S.C. § 227(a)(3) — Definition of "Telephone Facsimile Machine"**

The term "telephone facsimile machine" means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

**47 U.S.C. § 227(b)(1)(C) — Prohibition on Unsolicited Fax Advertisements**

It shall be unlawful (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement…

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **7,257** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman in 14-point size.

*/s/Ross M. Good*
Ross M. Good, Esq.
The Good Law Group
800 E. Northwest Hwy, Suite 814
Palatine, IL 60074
Phone: (847) 600-9576
Email: ross@thegoodlawgroup.com

**Attorney for Plaintiff Astro Companies, LLC.**

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Tenth Circuit using the CM/ECF system, which will send notification of such filing to all registered counsel of record.

*/s/Ross M. Good*
Ross M. Good, Esq.
The Good Law Group
800 E. Northwest Hwy, Suite 814
Palatine, IL 60074
Phone: (847) 600-9576
Email: ross@thegoodlawgroup.com

**Attorney for Plaintiff Astro Companies, LLC.**