NO. 26-1066
_____

**UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**
_____

Astro Companies, LLC,
*Plaintiff-Appellant*,

v.

WestFax Inc., Duck Dive Communications, LLC, d/b/a JBlast, Barry Clark, Chad
Matheson, and John Does 1-10,
*Defendants-Appellees*.

_____

On Appeal from Order Granting Defendant's Motion to Dismiss, and Order
Denying Astro Companies, LLC Motion to Reconsider
United States District Court for the District of Colorado
The Honorable Kato S. Crews, District Judge
Case No. 23-cv-02328-SKC

_____

**JOINT BRIEF OF DEFENDANTS-APPELLEES WESTFAX INC., DUCK
DIVE COMMUNICATIONS, LLC, d/b/a JBLAST, BARRY CLARK, AND
CHAD MATHESON**

_____

**SPENCER FANE LLP**
Joshua C. Dickinson, KS Bar No. 20632
13815 FNB Parkway, Suite 200
Omaha, NE 68154
Telephone: (402) 965-9600
jdickinson@spencerfane.com

Johanna R. Hyman, MN Bar No. 0397151
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 268-7009
jhyman@spencerfane.com
*Attorneys for Chad Matheson*

**Montgomery Little & Soran, P.C.**
James C. Taravella, CO No. 55179
Nathan G. Osborn, CO. No. 38951
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Telephone: (303) 773-8100
jtaravella@montgomerylittle.com

**Oral Argument Requested**

# I.   TABLE OF CONTENTS

I.      TABLE OF CONTENTS..............................................................II

II.     TABLE OF AUTHORITIES ...................................................... IV

III.    STATEMENT OF RELATED CASES .................................. VII

IV.     RULE 26.1 DISCLOSURE STATEMENT ........................... VII

V.      JURISDICTIONAL STATEMENT ...........................................1

VI.     STATEMENT OF ISSUES PRESENTED FOR REVIEW
        ....................................................................................................1

VII.    STATEMENT OF THE CASE....................................................2

        A.    The TCPA is Meant to Protect a Specific Class of Consumers That are not Astro or its Customers. ...................................................3

        B.    Astro's Well Pled Facts Relevant to Determining if its Services Fit Within the Definition of a "Telephone Facsimile Machine" as Contemplated by the TCPA. ......................................................4

        C.    Motions to Dismiss the First Amended Complaint ...................................5

        D.    Astro's Response to Mr. Matheson's Motion to Dismiss ...........................7

        E.    District Court Grants Mr. Matheson's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim.................................................................7

        F.    District Court Denies the Westfax MTDs as Moot....................................9

        G.    Astro Moves for Reconsideration .................................................9

VIII.   SUMMARY OF THE ARGUMENT ......................................10

IX.     ARGUMENT .............................................................................13

        A.    Astro Cannot State a Claim for Violation of the TCPA Because The Statute Only Covers Faxes Sent to a Telephone Facsimile Machine and Does Not Cover Faxes Received by an Online Fax Service...............13

              1.    Standard of Review........................................................13

              2.    The Plain Language of 47 U.S.C. § 227(a)(3) of the TCPA Does Not Cover Online Fax Services. ...........................................14

              3.    The TCPA's Statutory Purpose and Legislative History Support the Modern Understanding of What Is, and Is Not, a "Telephone Facsimile Machine."..............................................29

4.    The District Court Properly Applied the Rule 12(b)(6) Standard Set Forth in *Twombly* and *Iqbal*......................................30

B.    In the alternative, Judgment Should be Affirmed on Multiple Independent Grounds Raised Before the District Court. ..........................33

1.    Astro's Complaint Would Have Been Dismissed Because Astro Lacks Standing to Bring an Action Under the TCPA. .........34

2.    Astro Cannot Sustain a Claim Against the Defendants-Appellees Because It has Failed to Allege Any of Them were the "Sender" or "Sufficiently Involved" in the Creation of the Faxes at Issue. .........................................................................36

3.    The District Court Has No Personal Jurisdiction Over Defendants-Appellees JBlast and Barry Clark. ...........................39

C.    The District Court Acted Within its Sound Discretion In Denying Astro's Motion to Reconsider and Refusing Leave to Amend. .................42

1.    Standard of Review...................................................................42

2.    Astro's Motion to Reconsider Failed to Meet the Standards Required for the Court to Reconsider its Dismissal Order. ...........42

X.    CONCLUSION .........................................................................................45

XI.    ORAL ARGUMENT ..................................................................................46

XII.    CERTIFICATE OF COMPLIANCE .......................................................47

XIII.    CERTIFICATE OF SERVICE .................................................................48

## II.    TABLE OF AUTHORITIES

**CASES**

*Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187 (Colo. 2005)........................40

*Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.,* 961 F.3d 942 (7th Cir. 2020) ....................................................................................................37

*Asahi Metal Indus. Co. v. Superior Ct. of C.A.,* 480 U.S. 102 (1987)....................41

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................... 14, 30, 31

*Awad v. Ziriax,* 670 F.3d 1111 (10th Cir. 2012).....................................................34

*Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 1296 (2017) ...........................34

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).......................... 13, 14, 30, 31

*Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.,* 385 F.3d 1291 (10th Cir. 2004) ...........................................................................................................................39

*Bond v. United States*, 572 U.S. 844 (2014) ...........................................................18

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)................................... 39, 40

Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC, 91 F.4th 202 (4th Cir. 2024)........................................................................... 27, 28, 29, 31, 32

*Cellco Partn. V. Wilcrest Health Care Mgt., Inc.* No. CIV.A. 09-3534 MLC, 2012 WL 1638056 (D.N.J. May 8, 2012) .................................................................35

*Daimler AG v. Bauman,* 134 S. Ct. 746 (2014) ............................................... 39, 40

*Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199 (10th Cir. 2013) .............................42

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) ...............................................43

*Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915 (2011) ............40

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982) ...................................21

*Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997 (10th Cir. 2017) .42

*Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408 (1984).............40

*Imhoff Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015)............36

*Int'l Show, Co. v. Wash.,* 326 U.S. 310 (1945)................................................. 39, 41

*J. McIntrye Machinery, Ltd. v. Nicastro,* 564 U.S. 873 (2011)..............................40

*KHS Corp. v. Singer Fin. Corp.* 376 F.Supp.3d 524 (E.D. Pa. 2019).....................37

*King v. Burwell*, 576 U.S. 473 (2015) ....................................................................15

*Kopff v. World Research Group, LLC*, 568 F.Supp.2d 39 (D.D.C. 2008) ..............34

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) .................... 22, 23, 24

*Lyngaas v. Curaden Ag.,* 992 F.3d 412 (6th Cir. 2021) ................... 8, 27, 28, 29, 32

*McGraw v. Barnhart*, 450 F.3d 493 (10th Cir. 2006)..................................... 15, 29

*McLaughlin Chiro. Assoc. v. McKesson Corp.*, 606 U.S. 146 (2025)1, 10, 15, 21, 22, 23, 24, 44

*Miliken v. Meyer,* 311 U.S. 457 (1940) ................................................................39

*Nelson v. City of Albuquerque*, 921 F.3d 925 (10th Cir. 2019)..............................42

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)....................................................18

*Rome v. Reyes,* 401 P.3d 75 (Colo. App. 2017)......................................................40

*Russello v. United States*, 464 U.S. 16 (1983)......................................................17

*Servants of the Paraclete v. Does,* 204 F.3d 1005 (10th Cir. 2000)......................42

*Silver v. Primero Reorganized Sch. Dist. No. 2,* 619 F. Supp. 2d 1074 (D. Colo. 2007)......................................................................................................................32

*Skidmore v. Swift Co.*, 323 U.S. 134 (1944) ............................................. 22, 23, 24

*Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009)........................................13

*Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226 (10th Cir.1999) .........13

*U.S. v. Irvin,* 906 F.2d 1424 (10th Cir. 1990)........................................................13

*Walden v. Fiore,* 571 U.S. 277 (2014)...................................................................41

*Walton v. Powell*, 821 F.3d 1204 (10th Cir. 2016)................................................33

*Warad W., LLC v. Sorin CRM USA Inc*., 119 F. Supp. 3d 1294 (D. Colo. 2015)....7, 32

*Yates v. United States*, 574 U.S. 528 (2015).........................................................18

**STATUTES**

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 2342 .............................................................................................. 9, 43, 44

47 U.S.C. § 227 ........................ 1, 3, 8, 14, 15, 16, 17, 18, 19, 21, 23, 31, 33, 36, 44

**OTHER AUTHORITIES**

11 C. Wright & A. Miller, Fed. Prac. and Proc. § 2810.1 (2d ed. 1995)................43

*1992 TCPA Order,* 7 FCC Rcd. 8780 (1992) ........................................................36

H.R. Rep. No. 102-317 (1991)............................................................... 3, 29

*In re Amerifactors Fin. Grp., LLC Petition For Expedited Declaratory Ruling*, 34 F.C.C. Rcd. 11950 (Consumer & Gov't Affairs Bur. 2019)9, 11, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 34, 44, 45

*In re Rules and Regul. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd 14014 (2003) ....................................................... 9, 24, 36, 43, 44

*In re WestFax, Inc., Petition for Consideration and Clarification*, 30 F.C.C. Rcd 8620 (2015)...................................................... 9, 24, 25, 34

Petition for Expedited Declaratory Ruling of Amerifactors Financial Group, LLC, *In re Amerifactors Fin. Grp., LLC,* CG Dkt. Nos. 02-278 & 05-338 (F.C.C. filed July 13, 2017) .........................................................................26

*Use of Common Carriers,* 2 FCC Rcd. 2819 (1987) ..............................................36

## RULES

Fed. R. App. 26.1 ........................................................................ vii

Fed. R. App. P. 31 .........................................................................47

Fed. R. Civ. P. 12 ................................................ 6, 7, 13, 30, 31, 32, 42

Fed. R. Civ. P. 59 .........................................................................43

## REGULATIONS

47 C.F.R. §64.1200 .......................................................................36

### III.    STATEMENT OF RELATED CASES

There are no prior or related appeals to this action.

### IV.    RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, the undersigned for Montgomery Little & Soran, P.C., on behalf of Defendants-Appellees WestFax, Inc. ("Westfax"), Duck Dive Communications, LLC dba JBlast ("JBlast"), and Barry Clark ("Mr. Clark"), certifies as follows:

Consistent with the Disclosure Statements filed on March 19, 2026: (1) Westfax does not have any parent entities and no publicly traded company holds more than ten percent (10%) of Westfax's stock, as Westfax's sole shareholder is Mr. Clark; and (2) no publicly traded company holds any interest in JBlast as JBlast is wholly owned by Westfax. I hereby certify that, except as disclosed above, I am unaware of any actual or potential conflict of interest involving the appellate judge(s) assigned to this case and will immediately notify the Court in writing upon learning of any such conflict.

*s/ James C. Taravella*
James C. Taravella, #55179
Montgomery Little & Soran, P.C.
***Attorney for Westfax, Inc.; Duck Dive Communications, LLC; and Barry Clark.***

vii

## V.    JURISDICTIONAL STATEMENT

This Appellate Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## VI.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court, in interpreting 47 U.S.C. § 227(a)(3), correctly concluded that an online fax service, as alleged by Astro, does not qualify as a "telephone facsimile machine" under the Telephone Consumer Protection Act ("TCPA"), thereby dismissing Astro's complaint at the pleading stage for failure to state a claim.

2.    Whether, even if Astro succeeds on its issues on appeal, remand would be futile for reasons not addressed by the District Court, including (i) Astro lacks standing to bring a claim under the TCPA; (ii) Astro failed to state a claim under the TCPA because *inter alia* it did not allege any of the Defendants-Appellees are the "sender," of the faxes at issue; and (iii) as to JBlast and Mr. Clark, personal jurisdiction over JBlast and Mr. Clark is improper.

3.    Whether the District Court acted within its sound discretion in denying Astro's Motion to Reconsider and refusing leave to amend where Astro raised untimely arguments regarding the FCC's 2003 Order and Westfax Ruling, brought forward new arguments about statutory interpretation, and where the intervening decision in *McLaughlin* merely ratified the District Court's statutory interpretation principles already applied.

1

## VII.    STATEMENT OF THE CASE

Astro Companies, LLC ("Astro") is an online fax service provider that acts as a telecommunications intermediary, providing online fax delivery services to its subscribers – the intended recipients of said faxes. Astro's subscribers receive faxes as a PDF either through an online portal or by email attachment. Westfax and JBlast are fax broadcasters – they provide the infrastructure for faxes to be sent but are not involved in the creation or sending of any fax or the selection of any recipient of any fax. Mr. Clark is the sole shareholder of Westfax, and JBlast is owned by Westfax. Defendant-Appellee Chad Matheson ("Mr. Matheson") works for Westfax.

Astro's appeal arises from the District Court's February 12, 2025, Order granting Mr. Matheson's Motion to Dismiss and Final Judgment dismissing Astro's case with prejudice (App. Vol. 30, at 8774-8783), and the District Court's February 9, 2026, Order denying Astro's Motion to Reconsider. App. Vol. 31, at 9040-9043.

Astro's entire appeal is predicated on a false premise, which is that the District Court did not "understand" Astro's business and therefore made improper factual findings on a motion to dismiss. This is not so.

As discussed more fully below, the District Court construed Astro's well pleaded factual allegations in its Amended Complaint as true, while appropriately ignoring legal conclusions and other superfluous facts Astro attempted to add in its response to Mr. Matheson's Motion to Dismiss. In doing so, the District Court

determined, as a matter of law, that Astro, an online fax service, does not qualify as a "telephone facsimile machine" as contemplated in the TCPA, 47 U.S.C. § 227(a)(3).

Additionally, the District Court did not abuse its discretion in denying Astro's Motion to Reconsider because the Court did not misapprehend the facts, Astro's position, or the controlling law, and properly declined to "revisit issues already addressed" or consider "arguments that could have been raised in prior briefing." App. Vol. 31, at 9041.

### A. THE TCPA IS MEANT TO PROTECT A SPECIFIC CLASS OF CONSUMERS THAT ARE NOT ASTRO OR ITS CUSTOMERS.

The TCPA was enacted to protect consumers and the recipients of telemarketing calls and junk fax advertisements. As explained in a House Committee Report, traditional facsimile machines automatically accept, process, and print fax messages received over dedicated lines. H.R. Rep. No. 102-317, at 10 (1991). Because the fax recipient had no ability to prevent the automatic printing of unsolicited fax advertisements, junk faxes shifted the costs of paper, toner, and machine use from the sender to the recipient. *Id.* Unsolicited faxes also occupied the recipient's dedicated telephone line, rendering it unavailable for legitimate business communications. *Id.*

The TCPA does not extend protections to users of an online fax service, such as the one provided by Astro, because the unique harms potentially suffered by

owners of a traditional fax machine are not suffered by subscribers to an online service. Astro's online fax service converts incoming faxes into electronic files, stores them digitally, and then forwards them in PDF form attached to an email or makes them available for its customers – the ultimate recipients of faxes – through an online portal. App. Vol. 1, at 15. It does not force the recipient – here, Astro's subscribers and not Astro – to do anything related to the incoming fax.

Unlike the protected class under the TCPA, Astro's subscribers – the recipients of the faxes – are the ones who decide whether to open or print any fax received and an incoming fax does not tie up the lines (*i.e.*, it sits in a line of like-messages in an e-mail inbox[1]). Thus, the harms associated with traditional fax transmissions – the harms targeted by the TCPA – are absent here. As discussed *infra*, Congress recognized those limits and did not explicitly extend the TCPA's definition of "telephone facsimile machine" to protect additional classes of recipients.

### B. Astro's Well Pled Facts Relevant to Determining if its Services Fit Within the Definition of a "Telephone Facsimile Machine" as Contemplated by the TCPA.

Astro's Amended Complaint (App. Vol. 1, at 12) includes the following factual allegations, which are directly relevant to the question of whether Astro's services are a "telephone facsimile machine" as contemplated by the TCPA:

---

1 *See* App. Vol. 1, at 12, ¶¶22, 25; https://astrocompanies.com/carrier-services/smartmail-fax/

- "Astro provides online fax services to its customers." *Id*. at 15, ¶ 25;

- "Online fax services use equipment, namely, a fax server, to convert 'traditional faxes' into a readable form (such as a PDF) which is then either attached to an email and forwarded to the recipients computer via email or is made available on a portal (a server) maintained by the online fax service to be read by the online fax server subscriber/recipient and is available to be printed at the online fax service recipients' convenience." *Id.* at 15, ¶ 22;

- Astro owns the equipment used to receive the faxes at issue and is the "subscriber for each phone line that was sent the faxes at issue in this case." *Id.*, at 15, ¶¶ 26-27; and

- "Coast Credit contracted WestFax to send the [faxes] via facsimile transmission from telephone facsimile machines, computers, or other devices to the telecommunications services and facsimile machines of Astro." *Id.* at 23, ¶ 97.

The District Court was not required to accept any of Astro's allegations that were entirely legal or conclusory in nature, such as, stating verbatim the TCPA's definition of the term "telephone facsimile machine." *See, e.g., Id.* at 17, ¶ 37.

C. MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT

On March 12, 2024, Defendants-Appellees Westfax, JBlast, and Mr. Clark each filed a motion to dismiss Astro's Amended Complaint (App. Vol. 30, at 8624-8669, collectively, the "Westfax MTDs") pursuant to Fed. R. Civ. P. 12(b)(2) and

5

12(b)(6). The Westfax MTDs argued that the Amended Complaint should be dismissed for: (i) lack of personal jurisdiction as to each of JBlast and Mr. Clark; (ii) for lack of standing because Astro is not the "recipient" of any faxes, who the TCPA otherwise protects, but instead is an online intermediary who facilitates online access to faxes; and (iii) for failure to state a claim under the TCPA because (a) an online fax service is not a telephone facsimile machine under the TCPA, (b) a "sender," here Coast Credit, was not properly named and served in the action, and (c) the allegations, construed as true, do not attach liability under the TCPA to fax broadcasters or their principal officers. The faxes attached to the Amended Complaint are directed to customers of Coast Credit with existing account numbers – not Astro – and do not advertise for, or appear to benefit, any of the Defendant-Appellees in any manner.

Separately, on April 18, 2024, Defendant-Appellee Mr. Matheson filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). App. Vol. 30, at 8710, (the instant "Motion to Dismiss"). Mr. Matheson's Motion to Dismiss advanced three (3) arguments: (i) Astro, who is not a consumer or recipient of a fax, lacked standing to bring a claim under the TCPA; (ii) Astro failed to state a claim under the TCPA because the alleged unsolicited advertisements were not sent to "a telephone facsimile machine" as required by the statute; and (iii) Astro failed to state a claim

under the TCPA against Mr. Matheson personally because he is not a sender of the faxes or a fax broadcaster.

## D. ASTRO'S RESPONSE TO MR. MATHESON'S MOTION TO DISMISS

Despite the issues presented in each of the Westfax MTDs and Mr. Matheson's Motion to Dismiss, Astro filed response briefs, doubling down on its legal theories, insisting that it had standing and that its "fax servers are facsimile machines within the [TCPA's] statutory definition." App. Vol. 30, at 8740, 8754. In an attempt to clarify and/or add allegations not included in its Amended Complaint, Astro attached a declaration from its owner to its response brief. *Id.*, at 8759. The facts in Astro's declaration were not part of the Amended Complaint, and Astro is mistaken that they became allegations the District Court should have relied upon in deciding Mr. Matheson's Motion to Dismiss. *See Warad W., LLC v. Sorin CRM USA Inc.*, 119 F. Supp. 3d 1294, 1305 (D. Colo. 2015) ("[W]hen deciding a Rule 12(b)(6) motion, this Court may not consider new allegations contained in a plaintiff's response."). If Astro wanted to make additional factual allegations in an attempt to state a claim within the bounds of the TCPA, it could have filed a second amended complaint. Astro chose not to do so.

## E. DISTRICT COURT GRANTS MR. MATHESON'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

The District Court granted Mr. Matheson's Motion to Dismiss and applied the ruling to all Defendants-Appellees in this case. App. Vol. 30, at 8774 ("MTD

Order"). In so doing, the District Court immediately emphasized that it was not bound to accept as true Astro's legal conclusions couched as factual allegations. *Id.*, at 8776. The District Court also set the background of its order by distinguishing this case from the Sixth Circuit's opinion in *Lyngaas v. Curaden Ag.,* 992 F.3d 412 (6th Cir. 2021). App. Vol. 30, at 8777-8778. "[T]he court in *Lyngaas* was asked to consider whether a computer receiving an 'efax' could qualify as a telephone facsimile machine," and not "whether an online fax *service* was entitled to protection under the TCPA." *Id.*, at 8777.

The District Court's MTD Order interpreted the plain language of the TCPA Section 227(a)(3) utilizing standard canons of construction. *Id.*, at 8777-8779. Once the Court determined that an online fax service was not a "telephone facsimile machine" as defined in the TCPA, the court verified that its plain language interpretation was consistent with the statute's purpose, Congress's intent, and the most recent guidance provided by FCC. *Id.*, at 8779-8781.

The District Court ultimately held that based on its interpretation of the TCPA's plain language, "online fax services as alleged in Astro's operative pleading do not qualify as 'telephone facsimile machines' under the TCPA," and, further, "[b]ecause all of Astro's claims [were] brought pursuant to [TCPA] 47 U.S.C. § 227(b)(1)(C), it [could not] state a claim for relief against any of the defendants" as a matter of law. *Id.*

8

**F. DISTRICT COURT DENIES THE WESTFAX MTDS AS MOOT.**

Astro's claims as to all defendants were premised upon each defendant's violation of the TCPA. App. Vol. 30, at 8781. Once the Court held that Astro was not entitled to TCPA protection as an "online fax service," it concluded that Astro could not state a claim for relief against *any* defendant. *Id.* Consequently, the District Court denied the outstanding Westfax MTDs as moot. *Id.*

**G. ASTRO MOVES FOR RECONSIDERATION**

On March 7, 2025, Astro filed a motion requesting the District Court reconsider its decision granting the Motion to Dismiss. App. Vol. 30, at 8785 ("Motion to Reconsider"). Astro argued, for the first time, that pursuant to the *Hobbs Act,* 28 U.S.C. § 2342, the Court was bound by the FCC's 2003 order *In re Rules and Regul. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (2003) ("FCC's 2003 Order") and the FCC's ruling in *In re WestFax, Inc., Petition for Consideration and Clarification*, 30 F.C.C. Rcd. 8620 (2015) ("WestFax Ruling"). Astro further claimed that non-final orders by the FCC, including its order in *In re Amerifactors Fin. Grp., LLC, Petition For Expedited Declaratory Ruling*, 34 F.C.C. Rcd. 11950 (Consumer & Gov't Affairs Bur. 2019) ("*Amerifactors*"), were not entitled to any deference by the Court. App. Vol. 30, at 8787.

Additionally, Astro presented new statutory interpretation arguments that were not previously raised but which could have been raised in prior briefing on each

9

of the Defendants-Appellees motions to dismiss. App. Vol. 30, at 8785. On March 28, 2025, all Defendants-Appellees (except Coast Credit – the actual sender of the faxes at issue) filed a joint response to Astro's Motion to Reconsider. App. Vol. 31, at 9865. Astro filed a reply on April 11, 2025. App. Vol. 31, at 8977. While the Motion to Reconsider was pending, Astro filed a Notice of Supplemental Authority advising the District Court of the Supreme Court's decision in *McLaughlin Chiro. Assoc. v. McKesson Corp.*, 606 U.S. 146 (2025) ("*McLaughlin*"). App. Vol. 31, at 8995. Astro did not file a motion for leave to file a renewed motion for reconsideration or a second amended complaint. App. Vol. 31, at 9043.

On February 9, 2026, the District Court denied Astro's Motion to Reconsider because Astro failed to articulate any grounds warranting reconsideration. App. Vol. 31, at 9041 ("Order on Motion to Reconsider"). Specifically, the District Court declined to reconsider its ruling on the Motion to Dismiss because Astro did not identify any intervening change in the controlling law, present new facts to the Court that were previously unavailable or demonstrate some clear error resulting in manifest injustice. *Id.*, at 9043.

Astro filed this appeal on March 6, 2026. App. Vol. 31, at 9044.

## VIII.   SUMMARY OF THE ARGUMENT

This Appellate Court should affirm the District Court's Order on the Motion to Dismiss for a variety of reasons. First and foremost, the District Court's

interpretation of the TCPA statutes followed established case law, and its reliance upon *Amerifactors* as persuasive authority was proper and justified.

In light of that authority, and the statute's plain language, which requires that an unwanted fax advertisement be sent to and received by a "telephone facsimile machine," Astro cannot state a claim under the TCPA as to any of the Defendants-Appellees. By Astro's own admission, the faxes that form the basis of its Amended Complaint were not sent to, or received by, Astro on a "telephone facsimile machine" as required by the TCPA. Rather, Astro allegedly received the faxes at issue solely in its capacity as an online fax service whose sole purpose is to receive faxes via its electronic server and deliver those faxes in digital form to its customer subscribers. App. Vol. 1, at 15. As an intermediary, Astro provides those faxes as PDFs to its subscribers' personal emails or makes the PDF faxes available to subscribers via an online portal. *Id.* Astro was not the intended recipient of the alleged faxes.

The technology underpinning Astro's services is not one that Congress intended to cover in the TCPA's definition of "telephone facsimile machine." This understanding of congressional intent has been confirmed multiple times in the FCC's administrative decisions, which are directly on point. To adopt Astro's interpretation of "telephone facsimile machine" to include any equipment having the general ability to somehow print the fax transmission ignores the TCPA's statutory

11

wording and purpose. Astro's interpretation flies in the face of Congress's stated intent under the law, agency decisions, and case law, and would expand the definition such that it would lead to an absurd result.

Additionally, even if, *arguendo,* Astro succeeds on its arguments that the District Court's interpretation of the statute was incorrect – which it was not – remand would be futile because the Amended Complaint would still be dismissed upon several independent grounds, including for: (i) lack of standing (Astro is not the type of plaintiff protected under the TCPA); (ii) failure to state a claim for relief under the TCPA by failing to name the "sender" and because, in part, (a) Matheson and Mr. Clark are neither the sender or fax broadcaster, and (b) Westfax and JBlast are not the sender and were not involved with the alleged faxes; and (iii) as to two of the defendants – JBlast and Mr. Clark – for lack of personal jurisdiction.

Finally, the District Court properly denied Astro's Motion to Reconsider the MTD Order because, in part, the Motion to Reconsider raised untimely arguments, failed to identify new evidence or law, and did not demonstrate how such new evidence or law were unavailable to Astro prior to the Motion to Reconsider.

For the reasons stated herein, the District Court's MTD Order and the Order on Motion to Reconsider should be affirmed, and Astro's request for relief and appeal denied.

12

## IX.    ARGUMENT

**A. ASTRO CANNOT STATE A CLAIM FOR VIOLATION OF THE TCPA BECAUSE THE STATUTE ONLY COVERS FAXES SENT TO A TELEPHONE FACSIMILE MACHINE AND DOES NOT COVER FAXES RECEIVED BY AN ONLINE FAX SERVICE.**

### 1.  Standard of Review

This appeal presents a purely legal question: whether Astro's Amended Complaint plausibly states a claim under the TCPA. Accordingly, the District Court's MTD Order is reviewed *de novo*. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Under that standard, this Court independently evaluates the sufficiency of the allegations set forth in the Amended Complaint. *See U.S. v. Irvin*, 906 F.2d 1424, 1426 (10th Cir. 1990).

For purposes of resolving a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court accepts true all well-pleaded factual allegations in a complaint and views the allegations in the light most favorable to the plaintiff. *Smith*, 561 at 1098. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999) (internal quotation omitted). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Indeed, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 555.

The *Twombly/Iqbal* pleading standard requires the court to first identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* Next, it requires the court to assume only the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

2. **The Plain Language of 47 U.S.C. § 227(a)(3) of the TCPA Does Not Cover Online Fax Services.**

As the District Court correctly articulated in its MTD Order, "resolution of this case turns on a consideration of what a telephone facsimile machine is or, as pertinent here, is not." App. Vol. 30, at 8774. It appears the parties agree that the key issue here is whether a recipient "online fax service," such as Astro, qualifies as a "telephone facsimile machine" and is therefore capable of stating a claim for violation of the TCPA.

The relevant portion of the TCPA states:

> It shall be unlawful for any person within the United States –
> . . .

> (C) to use any telephone facsimile machine, computer, or other device *to send to a telephone facsimile machine*, an unsolicited advertisement…

47 U.S.C. § 227(b)(1)(c) (emphasis added).  Thus, to maintain a claim for violation of Section 227(b)(1)(c) of the TCPA, Astro was required to set forth well-pleaded factual allegations, and sufficient factual matter, that when accepted as true, indicate a person sent an unsolicited advertisement *to a telephone facsimile machine*.

In construing the meaning of "telephone facsimile machine" as set forth in 47 U.S.C. § 227, the Court's primary task is to determine congressional intent, using traditional tools of statutory interpretation. *McGraw v. Barnhart*, 450 F.3d 493, 498 (10th Cir. 2006). "When interpreting the language of a statute, the starting point is always the language of the statute itself. If the language is clear and unambiguous, the plain meaning of the statute controls." *Id.*

That said, Courts read a statute's words in context and the overall statutory scheme. *King v. Burwell*, 576 U.S. 473, 486 (2015). Additionally, consistent with the U.S. Supreme Court's ruling in *McLaughlin*, courts must "interpret the TCPA under ordinary principles of statutory interpretation, [while also] affording appropriate respect to the agency's interpretation." *McLaughlin,* 606 U.S. at 152.

15

a) *Canons of statutory interpretation tell us that the offending fax must be sent to and received on a "telephone facsimile machine" and not on a "computer or other device."*

The plain language of Section 227(b)(1)(c) indicates that "telephone facsimile machine" cannot be read as broad as Astro suggests. Looking to each word used in this statute, there is a clear distinction between a "telephone facsimile machine" on one hand, and a "computer" or "other device" on the other. The TCPA prohibits the *sending* of an advertisement *to* a "telephone facsimile machine," while stating it is unlawful to *send from* either a "telephone facsimile machine, computer, or other device." In other words, while liability can be triggered if an advertisement is sent from any of the three "device[s]," Congress only prohibited unsolicited faxed advertisements *sent to* a "telephone facsimile machine." This intentional difference, that an unsolicited advertisement violates the statute only when sent *to* a "telephone facsimile machine," indicates Congress's careful distinction that a "telephone facsimile machine" *is not also, and must be different than,* a "computer or other device." If the Court were to accept Astro's interpretation, a "telephone facsimile machine" can include *any* equipment that can print – presumably a "computer or other device."

16

The well-established cannon of statutory interpretation *expression unios* is helpful in dissecting the plain language of this statute.[2] We know that "[w]here Congress includes particular language in one section of a statute but omits it from another section of the same Act," Congress acted "intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). That is exactly what Congress did here. Congress expressly identified three categories of sending equipment – a "telephone facsimile machine," "computer," and "other device" – but limited liability to advertisements sent to be received by only a "telephone facsimile machine." Had Congress intended the term "telephone facsimile machine" to encompass computers and other devices, there would have been no reason to distinguish among the three listed devices in the first place. The Court must therefore give effect to Congress's deliberate choice of language rather than adopt an interpretation that collapses the distinction Congress created.

---

[2] Astro argues that this cannon of construction does not apply if there are "contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion," and it applies only when "circumstances support a sensible inference that the term left out must have been meant to be excluded." Opening Br., at 17-18. Astro claims that the contrary indication here is that Congress used the words "any equipment," which is "an affirmative expansion not a limitation." But the TCPA's definition of telephone facsimile machine does not refer to "any" equipment. 47 U.S.C. § 227(a)(3) ("telephone facsimile machine" means equipment which has the capacity…"); *contrast with,* Opening Br., at 19 ("Congress's use of 'any' is an affirmative expansion, not a limitation").

Here, Congress's intent for the defined term "telephone facsimile machine" is clear. The TCPA defines a "telephone facsimile machine," as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3); *see also* App. Vol. 30, at 8778. If a "telephone facsimile machine" is "equipment" with the "capacity to transcribe text or images" onto paper but is distinct from a "computer or other device," as discussed above, then the equipment utilized by a "telephone facsimile machine" cannot also be a "computer or other device."

Astro's proposed interpretation requires isolating two words from the definition: "equipment" and "capacity." But statutory meaning "does not turn solely on dictionary definitions of its component words." *Yates v. United States*, 574 U.S. 528, 537 (2015). Rather, language must be understood in "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Thus, even where a statute defines a given term, "a fair reading" considers "the ordinary meaning of a defined term," such that a statute's reach does not exceed "the ordinary meaning of the words Congress wrote." *Bond v. United States*, 572 U.S. 844, 861 (2014).

18

A fair reading of Section 227(a)(3), informed by the ordinary meaning of "telephone facsimile machine," refers to the "well understood" traditional fax machine that existed when Congress enacted the TCPA in 1991. App. Vol. 30, at 8778. Other TCPA provisions confirm the same reading. For example, Congress directed the FCC to impose requirements on "telephone facsimile machines" that were "manufactured" after a specified date. 47 U.S.C. § 227(d)(2). An online fax service is not something that can be manufactured, nor does Astro allege that it uses any such manufactured hardware.

In an attempt to shoehorn its online fax service into the TCPA's definition of a "telephone facsimile machine," Astro isolates "equipment" and "capacity" from the rest of the definition and argues that Congress intended to broadly include "*any* equipment" under the statute. Opening Br., at 10. But nothing in the text indicates that Congress intended the word "equipment" to include *any* technological equipment that may receive, store, forward, display, or ultimately print an electronic document. Indeed, the text indicates the opposite: Congress intentionally distinguished a fax machine's equipment from "a computer or other device."

Although Astro points to other TCPA cases that may have more broadly construed the term "equipment," those cases considered that term in a completely different statutory context involving automatic telephone dialing systems. Opening

19

Br., at 14. Likewise, Astro's "capacity" argument depends on authority addressing different TCPA language. *Id.*, at 15.

Even if the Court *were* to isolate the terms "equipment" and "capacity" in the definition, it does not change the outcome of this case because Astro never identifies with any specificity what its "equipment" is (other than vaguely referring to servers and telecommunications systems) nor does Astro allege facts to establish that its alleged equipment has the present capacity to transcribe signals it receives onto paper. *See, e.g.*, App. Vol. 1, at 12-33.[3]  In any event, "equipment" and "capacity" cannot be severed from the fax-specific functions Congress was referring to at the time it drafted the TCPA. Context controls.

b) <u>*Adoption of Astro's interpretation would be overinclusive, overbroad, and produce an absurd result.*</u>

Astro's interpretation of "telephone facsimile machine" would dramatically expand the TCPA beyond anything Congress contemplated. If "equipment with the capacity" can consist of multiple interconnected devices that collectively can transcribe electronic information onto paper, as Astro proposes, then smartphones, computers, cloud servers, and printers, taken together, all qualify as "equipment"

---

[3] Astro's complaint merely states, in conclusory fashion: "Online fax services also contain equipment that has the capacity 'to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.'"  App. Vol. 1, at 15, ¶ 23.  This allegation does not pass muster on a motion to dismiss.

20

with the "capacity" to print and would satisfy the statutory definition of a "telephone facsimile machine."

Take for example, smartphones. Smartphones receive electronic information over telephone lines, connect to cloud servers and computers, and can direct a printer to produce a paper copy of the electronic information appearing on it.  If that is enough to constitute "equipment" with the "capacity" to transcribe an electronic signal onto paper, then every smartphone that can connect to a printer becomes a "telephone facsimile machine." That cannot be what Congress intended. Astro's reading stretches the statute beyond common sense, towards absurdity, because it "sweeps in" any remotely connected electronic devices that are capable, together, of printing. Opening Br., at 25.

Courts avoid interpretations that produce absurd results when a contextually sound alternative is available. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). The correct interpretation of the TCPA statutes is grounded in the plain statutory text: Congress regulated fax machines and their functional equivalents, not every interconnected system that can ultimately cause a document to be printed.

   c) *The FCC's modern interpretation confirms that online fax services fall outside Section 227(b)(1)(C)*

Although courts must independently interpret the TCPA, agency interpretations remain relevant to the extent they are persuasive. In *McLaughlin*, the Supreme Court recently explained that courts should interpret the TCPA under

21

ordinary principles of statutory construction while also affording "appropriate respect" to the FCC's interpretation. 606 U.S. 146, 152 (2025). Similarly, *Loper Bright Enterprises v. Raimondo* instructs that courts perform their interpretive role "with due respect for the views of the Executive Branch," 603 U.S. 369, 403 (2024). Those principals trace back to *Skidmore v. Swift Co.*, which recognizes that agency interpretations may provide guidance based on the agency's experience, expertise, and informed judgment. 323 U.S. 134, 139-40 (1944). The FCC's interpretation therefore informs, but does not control, the Court's analysis.

Here, the court followed precisely that approach. In the MTD Order, the District Court stated that "[a]lthough the Court relies only on the statutory language for its analysis, its conclusions are buttressed by the [FCC's] declaratory ruling in [*Amerifactors*] which this court finds instructive and persuasive." App. Vol. 30, at 8779. Thus, rather than treating FCC's *Amerifactors* as binding authority, the District Court independently interpreted the statute and then looked to the FCC's reasoning only as persuasive confirmation of its textual analysis.

i.    *Amerifactors confirms that modern online fax services are not "telephone facsimile machines" and supports the District Court's conclusion.*

The FCC's analysis in *Amerifactors* mirrors the textual distinction discussed above and recognized by the District Court. There, the FCC observed that Congress prohibited unsolicited advertisements sent to a "telephone facsimile machine," while separately recognizing that such advertisements may originate from a "telephone

22

facsimile machine," a "computer," or an "other device." *Amerifactors*, 34 FCC Rcd. at 11952-53 ¶ 10. The FCC further concluded that online fax services which receive, store, and manage documents electronically are more appropriately characterized as a "computer" or "other device" rather than a "telephone facsimile machine." *Id* at ¶¶ 11-13.

Here, Astro does not allege that the junk faxes were sent to anything like a traditional fax machine. Rather, Astro alleges that it operates something more akin to a "computer or other device." Astro is a service that, "uses equipment, namely, a fax server, to convert 'traditional faxes' into a readable form (such as a PDF)," and then either forwards those PDFs by email to subscribers or makes them available to its subscribers through a server-based portal. App. Vol. 1, at 15, ¶ 22. *Amerifactors* is particularly persuasive because it addresses the very technology Astro alleges that it employs. And in doing so, it rejects the same expansive interpretation Astro advances here – that "any" equipment, including an online fax service, may qualify as a "telephone facsimile machine" merely because some component of the system may be capable of printing. *Amerifactors* 34 FCC Rcd. at n.33.

Accordingly, *Amerifactors* carries substantial persuasive force under *McLaughlin*, *Loper Bright*, and *Skidmore* and provides additional confirmation that online fax services fall outside the scope of Sections 227(a)(3) and 227(b)(1)(C).

> *ii.    The 2003 Order and WestFax Ruling are distinguishable and therefore do not deserve as much weight as Amerifactors.*

When considering multiple persuasive authorities under *McLaughlin*, the relevant question is which interpretation is most persuasive under the principles recognized in *Loper Bright* and *Skidmore*. Astro argues that the District Court afforded insufficient weight to the FCC's earlier 2003 Order and WestFax Ruling, and asserts that both orders should be given persuasive weight because they addressed the "precise question presented" – but they did not. Opening Br., at 24.

The type of "equipment" considered in the 2003 Order and WestFax Ruling is materially different from the equipment the commission considered in *Amerifactors*. In both the 2003 Order and the WestFax Ruling, the commission was focused on whether fax messages sent to recipients as emails fell within the scope of the TCPA. More specifically, the WestFax Ruling involved an "efax" sent to a computer with an attached modem that itself had the capacity to print the fax. *See, generally,* WestFax Ruling. That is not the technology Astro alleges here. Rather, Astro alleges that it operates an online fax service of the same type discussed in *Amerifactor*s. Compare the online fax service described in *Amerifactors* to Astro's description of an online fax service – which Asto alleges it is of the same type (App. Vo. 1, at 15, ¶ 25) –as alleged in its Amended Complaint:

> "Online fax services use equipment, namely a fax server to convert 'traditional faxes' into a readable form (such as PDF) **which is then either attached to an email and forwarded to the recipients' computer via email or is made**

24

**available on a portal** (a server) maintained by the [service] to be read by [the service's] subscriber/recipient and is **available to be printed at the online fax service recipients' convenience**." App. Vol. 1, at 15, ¶ 22 (emphasis added).

Like Astro, the FCC defined an "online fax service" to be a "service consisting of a fax server that receives documents, converts those documents to PDFs, and allows users to access faxes by logging into a server over the internet or by receiving the PDF attachment as an email." *Amerifactors,* ¶ 2. Unlike the 2003 Order and Westfax Ruling, *Amerifactors* addressed the precise technology alleged in Astro's Amended Complaint. For that reason, it carries greater persuasive force here.

Astro's other arguments against the District Court's reliance on *Amerifactors* are also without merit:

- Astro argues that Westfax should be estopped from relitigating this issue. Opening Br., at 25-26. But the WestFax Ruling addressed a different question involving the conversion of a fax to email during transmission rather than online fax services. *Amerifactors*, 34 FCC Rcd. at 11954, ¶ 15. Astro cites no law in support of its estoppel theory;

- Astro argues that the FCC's discussion of faxes "sent as email over the Internet" does not apply because its servers receive the original fax over

25

"regular telephone lines, not as email forwarded over the internet."[4] Opening Br. at 26; *see, by contrast, Amerifactors'* Petition (Petition for Expedited Declaratory Ruling of Amerifactors Financial Group, LLC, *In re Amerifactors Fin. Grp., LLC,* CG Dkt. Nos. 02-278 & 05-338 (F.C.C. filed July 13, 2017) (reproduced in Supp. App. Vol. 1)). But the FCC's analysis in *Amerifactors* did not turn on the manner in which the sender transmitted the fax message to the recipient, *i.e.* as an email over the internet, but instead focused on how the fax message is received and processed. It is the receipt and processing of the fax message for its recipient by the fax service that is just like "receiving an email over the internet." Astro's services are more akin to email, and its equipment is more appropriately characterized as a "computer" rather than a "telephone facsimile machine." *Amerifactors*, 34 FCC Rcd. at 11953-54 ¶¶ 11-13.

---

[4] Astro suggests that it receives faxes for its subscribers over "regular telephone lines," but that is not the case. As explained in the *Amerifactors'* Petition (*see,* Supp. App. Vol. 1, at 1-37), a "regular telephone line" most likely refers to the single voice, telephone line to which original fax machines were attached. This squares with the statute's concern that unsolicited faxes "tied up" a user's telephone line. Astro is an *online* fax service – a cloud-based, web service. They are not accessed by customers, or by senders of documents via regular telephone lines. Its servers are located within the cloud and are accessed by other service providers using IP networking. These facilities are complex telecommunications facilities, not "regular telephone lines" and they do not get "tied up." This is also consistent with the description on its website. *See* https://astrocompanies.com/carrier-services/smartmail-fax/.

In short, the FCC's 2003 Order and WestFax Ruling are less persuasive not because they are older, but because they addressed different technology and different questions. *Amerifactors* addressed the precise type of online fax service alleged here and therefore provides the most persuasive FCC guidance. The District Court appropriately relied upon it as persuasive confirmation of its independent textual analysis.

### d) *Career Counseling is more persuasive than Lyngaas.*

Contrary to Astro's argument, the District Court correctly found *Career Counseling* more persuasive than *Lyngaas*. *Career Counseling* addressed the dispositive question here, and did so more recently, with the benefit of the FCC's *Amerifactors* declaratory ruling.

*Career Counseling* squarely considered whether transmissions sent to an online fax service qualify as unsolicited advertisements sent to a "telephone facsimile machine" under the TCPA and held that they do not. *Career Counseling, Inc. v. AmeriFactors Fin. Grp.*, LLC, 91 F.4th 202, 209-10 (4th Cir. 2024). Relying on the statute's plain text, and consistent with the FCC's declaratory ruling, the court explained why online fax servers do not qualify as telephone facsimile machines. The technology discussed in *Career Counseling*, the same technology addressed by the FCC in *Amerifactors*, is identical to the technology offered by Astro.

27

For the same reasons *Amerifactors* is more relevant to the technology at issue in this case, so is the Fourth Circuit's opinion in *Career Counseling*.

*Lyngaas*, on the other hand, considered whether the TCPA could extend to faxes received by a computer over a telephone line, including computers with printing capabilities. *Lyngaas*, 992 F.3d at 427. The devices discussed in *Lyngaas* were functionally akin to traditional fax machines because they were a single unit, a computer hooked up to a modem, that could receive and print fax transmissions.

While *Lyngaas* may suggest that the statutory definition can reach beyond a stand-alone fax machine in some circumstances, it does not resolve the narrower question presented here about online fax services. And although the *Lyngaas* court acknowledged that *Amerifactors* was pending before the FCC, it did not consider that ruling because it remained on review at the FCC, neither party raised it in their briefing, and any eventual disposition would not have affected *Lyngaas*, whose operative facts predated *Amerifactors* by more than three (3) years. In other words, when *Lyngaas* was decided, *Amerifactors* did not yet exist as settled guidance.

*Career Counseling*, by contrast, reflects the post-*Amerifactors* understanding of online fax services. It expressly drew the distinction that controls here: the difference between a traditional fax machine, or a comparable device with printing capability, and an online fax service that receives and stores faxes electronically.

*Career Counseling* is therefore the more persuasive and more directly applicable authority, the District Court correctly relied upon it.

3. <u>**The TCPA's Statutory Purpose and Legislative History Support the Modern Understanding of What Is, and Is Not, a "Telephone Facsimile Machine."**</u>

The TCPA's text resolves this appeal. But even if the Court concludes that the definition of a "telephone facsimile machine" is ambiguous, the result is the same. When statutory language is susceptible to more than one reasonable interpretation, courts may consider additional interpretive aids, including looking to the statutory purpose and legislative history. *See McGraw*, 450 F.3d at 498-99. Those sources were relied upon in *Amerifactors*, *Career Counseling,* and *Lyngaas*, as well as the District Court here.

The TCPA's legislative history confirms that Congress was concerned with the unique burdens imposed on recipients of traditional facsimile machines. The House Committee Report explained that facsimile machines automatically accept, process, and print messages received over dedicated telephone lines. H.R. Rep. No. 102-317, at 10 (1991). Because recipients had no ability to prevent the automatic printing of unsolicited advertisements, junk faxes shifted the costs of paper, toner, and machine use from the sender to the recipient. Unsolicited faxes also occupied the recipient's telephone line, rendering it unavailable for legitimate business

29

communications. The TCPA's junk-fax provisions were enacted to prevent those harms.

Those concerns do not apply to online fax services. Astro converts incoming faxes into electronic files, stores them digitally, and then forwards them in PDF form attached to an email or makes them available through an online portal. (App. Vol. 1, at 15). The recipient – not Astro – decides whether to print the document. *See Amerifactors,* 34 FCC Rcd. at 11953. As the District Court correctly recognized, online fax services do not automatically consume paper or toner and do not tie up a recipient's telephone or fax line in the manner Congress sought to prevent. App. Vol. 30, at 8780-8781.

Congress enacted the junk-fax provisions to protect recipients forced to bear the costs and operational burdens associated with traditional fax machines. Nothing in the statutory text or legislative history suggests that Congress intended those protections to extend to a digital intermediary that receives, stores, and forwards documents electronically. To the contrary, the harms identified by Congress arise only when an unsolicited advertisement is received on a traditional fax machine or its functional equivalent – not when it is received by an online fax service.

**4.  The District Court Properly Applied the Rule 12(b)(6) Standard Set Forth in *Twombly* and *Iqbal.***

As discussed *supra*, courts must accept well-pleaded factual allegations as true, but they are not required to accept legal conclusions couched as factual

allegations. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Astro's appellate argument rests on the premise that the District Court improperly resolved factual disputes against it at the pleading stage. Opening Br., at 27-30. It did not. The District Court accepted Astro's factual allegations regarding how its online fax service operates as true, and then dismissed the Amended Complaint because those allegations did not establish that Astro received the challenged faxes on a "telephone facsimile machine" as that term is used in Section 227(a)(3) and interpreted by the District Court.

The District Court was not required to accept Astro's conclusory allegations that its equipment qualifies as a "telephone facsimile machine" because said equipment "has the capacity" to transcribe images and text to paper. Whether the technology described in the Amended Complaint satisfies the statutory definition of a "telephone facsimile machine" is a legal question, not a factual one. The District Court properly determined that Astro's allegations clearly described an online fax service – just like the ones addressed in *Amerifactors* and *Career Counseling* – rather than describing the modern understanding of what qualifies as a "telephone facsimile machine" under the TCPA.

Astro also argues that the lower court erred by making assumptions and resolving the issue of whether Astro qualifies as a "telephone facsimile machine" on a Rule 12(b)(6) motion "against Astro's sworn, unrebutted technical allegations."

31

Opening Br., at 27-28. But those "sworn, unrebutted" statements were not part of the operative complaint and were therefore properly disregarded on a Rule 12(b)(6) motion. *See Warad,* 119 F. Supp. 3d at 1305 ("[W]hen deciding a Rule 12(b)(6) motion, this Court may not consider new allegations contained in a plaintiff's response."); *see also Silver v. Primero Reorganized Sch. Dist. No. 2,* 619 F. Supp. 2d 1074, 1080 (D. Colo. 2007) ("Because this Court's review on a Motion to Dismiss is limited to those facts asserted in the Amended Complaint, the Court disregards the Plaintiff's affidavit, and examines only that which is alleged in the Amended Complaint."). In any event, those additional allegations would not change the outcome. Even accepting Astro's supplemental description of its infrastructure, the dispositive issue remains a legal one: whether an online fax service constitutes a "telephone facsimile machine" under the TCPA. For the reasons discussed above, it does not.

Finally, it is irrelevant that the *Lyngaas* and *Career Counseling* courts resolved the "telephone facsimile machine question" after discovery. *See* Opening Br., at 28. In those cases, the procedural landscape was different (they were class actions) and both cases included factual allegations related to traditional fax machines. Here, Astro's own allegations establish the nature of its technology and make clear this case does not involve any traditional fax machines. Because the question of whether Astro's service can be a "telephone facsimile machine" is a legal

one apparent from the face of the complaint, the District Court appropriately resolved it on a motion to dismiss.

## B. IN THE ALTERNATIVE, JUDGMENT SHOULD BE AFFIRMED ON MULTIPLE INDEPENDENT GROUNDS RAISED BEFORE THE DISTRICT COURT.

In the MTD Order, the District Court focused exclusively on whether Astro's service qualified as a "telephone facsimile machine" under the TCPA. *See, e.g.,* App. Vol. 30, at 8774-8782. However, even if this Court were to conclude that the District Court erred in its analysis of that issue, dismissal remains appropriate because Astro's Amended Complaint fails on multiple independent grounds raised by Defendants-Appellees but left unaddressed by the District Court. "To prevent cases from needlessly bouncing back and forth between district and appellate courts, this court is entitled to affirm a district court on alternative grounds that court didn't consider if those grounds are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal." *Walton v. Powell*, 821 F.3d 1204, 1212 (10th Cir. 2016).

Accordingly, even if this Court disagrees with the District Court's interpretation of Section 227(a)(3), affirmance remains appropriate because Astro's Amended Complaint independently fails on multiple grounds the lower court did not reach: (i) Astro lacks standing under the TCPA; (ii) the Amended Complaint fails to plausibly allege the elements of a TCPA claim against any defendant; and (iii) the Court lacks personal jurisdiction over certain defendants.

33

1. **Astro's Complaint Would Have Been Dismissed Because Astro Lacks Standing to Bring an Action Under the TCPA.**

Astro does not have standing under the TCPA to bring the claims asserted in its Amended Complaint. Questions on standing are reviewed *de novo. See Awad v. Ziriax,* 670 F.3d 1111, 1119-20 (10th Cir. 2012).

"[A] statute ordinarily provides a cause of action only to plaintiffs whose interests fall within the…interest protected by the law invoked." *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 1296, 1302 (2017) (internal quotations omitted). The TCPA protects the interests of the intended recipient of an unsolicited fax. *See Kopff v. World Research Group, LLC*, 568 F.Supp.2d 39, 40-42 (D.D.C. 2008). "[I]t is the consumer to whom the content of a fax or efax is directed that is the recipient." *WestFax Ruling*, 30 F.C.C. Rcd. at 8620, ¶ 12 (internal quotations omitted). A person that "convert[s] faxes to email are not 'recipients' of such faxes under the TCPA because they are not the intended audience for the fax." *Id.*

By Astro's own admission, Astro is a fax service for others. App. Vol. 1, at 15, ¶¶ 24-25 (Astro alleges that it "provides online fax services to its customers.") Astro therefore acts as an intermediary, not the consumer Congress intended to protect. *Amerifactors* 34 F.C.C. Rcd. at 11954 ("Faxes sent to online fax services do not cause the specific harms to consumers Congress sought to address in the TCPA."). Further review of the multitude of alleged faxes attached to Astro's Amended Complaint shows that Astro is neither the recipient, nor the intended

34

recipient, of the faxes. *See, e.g.,* App. Vol. 29, at 8420 (addressed to "Connie's Kitchen") or at 8415 (addressed to "Omega Sign & Lighting."). The faxes appear to be addressed to third parties with account numbers for Coast Credit.

Astro's position in this case is analogous to that of the plaintiff in *Cellco Partn. V. Wilcrest Health Care Mgt., Inc.* No. CIV.A. 09-3534 MLC, 2012 WL 1638056 (D.N.J. May 8, 2012). In *Cellco*, Verizon brought claims for TCPA violations against Wilcrest Health Care, arising from robocalls to millions of Verizon's subscribers. The court in *Cellco* held that Verizon could not assert TCPA violations on behalf of itself because it was a telecommunications provider and not a recipient (like its subscribers were). *Cellco,* 2012 WL 1638056 at *6, 10. Verizon was therefore not the type of party the TCPA intended to protect and lacked standing under the TCPA. *Id.*

Like Verizon in *Cellco*, Astro is an intermediary providing a telecommunications service – here, online fax services. It does not itself "receive" the faxes; rather, it converts incoming fax transmissions and facilitates the transfer of said fax to the ultimate recipient – Astro's customers, who are the apparent intended recipients identified on the face of the faxes attached to the Amended Complaint.

Astro, in its response to each of the motions to dismiss, failed to rebut its own allegations that show it is not the intended protected party under the TCPA. *See, e.g.,*

35

Astro's Resp. to Chad Matheson's Mot. to Dismiss, App. Vol. 30, at 8740-8757. Nor did Astro identify any allegation demonstrating that it, rather that its customers, was the intended recipient of the challenged faxes. Thus, even accepting the allegations in the Amended Complaint as true, Astro failed to establish standing under the TCPA.

**2.** **Astro Cannot Sustain a Claim Against the Defendants-Appellees Because It has Failed to Allege Any of Them were the "Sender" or "Sufficiently Involved" in the Creation of the Faxes at Issue.**

Liability under the TCPA "attaches to the entity whose goods are advertised as opposed to the fax broadcaster." *Imhoff Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 634 (6th Cir. 2015) (citing 47 U.S.C. § 227(b)(1)(C)) (internal quotations omitted). "[A] fax broadcaster's exemption from liability is based on the type of activities it undertakes, and only exists '[i]n the absence of 'a high degree of involvement or actual notice of an illegal use.'" *See* 47 C.F.R. § 64.1200(a)(4)(vii); *see also* 2003 Order, citing *1992 TCPA Order,* 7 FCC Rcd. at 8780 (1992), para. 54 (quoting *Use of Common Carriers,* 2 FCC Rcd. 2819, 2820 (1987)). A "fax broadcaster will not be responsible for the ads, in the absence of any other close involvement, such as determining the content of the faxed message." TCPA's 2003 Order, at ¶ 195.

The TCPA is also explicit as to when an individual can be held liable – the individual must either be the "sender" of the fax itself, or must have "had direct,

36

personal participation in or personally authorized the conduct found to have violated the statute." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.,* 961 F.3d 942, 946 (7th Cir. 2020) (court concluded that defendant did not "fit within the definition of sender" because the individual did not send any of the faxes, the faxes were not sent on the defendant's behalf personally, and the faxes advertised the services of another.) (internal citation omitted); *see also KHS Corp. v. Singer Fin. Corp.* 376 F.Supp.3d 524 (E.D. Pa. 2019) (holding that financial lending company's officer was not personally liable for violations of the TCPA, although officer personally directed and participated in faxing, where advertisements were faxed on behalf of lending company – not officer – as advertisements promoted lending company's products and services and were sent to individuals and entities that lending company hoped to do business with as a corporation.).

As to each of the individual Defendants-Appellees, Mr. Clark and Mr. Matheson, Astro's Amended Complaint fails to sufficiently allege that either individual was a "sender" of any of the faxes or that the faxes were sent to solicit business on either individual's behalf. Coast Credit, a defendant named but curiously never served in this case, is the entity apparently responsible for all of the alleged faxes at issue. *See, e.g.,* App. Vol. 29. Astro does not allege, and indeed could not allege, that either Mr. Clark or Mr. Matheson personally benefited from or was the subject of Coast Credit's advertisements. Nor does Astro allege that either individual

37

personally sent the faxes at issue. With respect to Mr. Matheson specifically, Astro alleges only that he was an employee of Westfax. Astro does not allege that Mr. Matheson was a fax broadcaster, that any fax was sent on his behalf, or that he exercised the type of control necessary to impose individual liability under the TCPA. *See* App. Vol. 30, at 13-15.

As for Defendants-Appellees JBlast and Westfax, each of JBlast and Westfax are an automated broadcaster where the fax sender provides all the information, including the fax advertisement and recipient information – neither Westfax nor JBlast exercise editorial control or discretion over the content of the fax message, nor do they provide the list of fax numbers to which faxes may be transmitted. App. Vol. 30, at 8654, ¶¶ 8-11. And, again, the faxes complained of are clearly not from Westfax or JBlast, and do not advertise any services for either Westfax or JBlast – they are all sent by the mysterious "Coast Credit," which, again, is a named defendant in the lawsuit, but was never served.

Astro's own deficient allegations in its Amended Complaint, coupled with the faxes it attaches to it, make it clear that Coast Credit – and not of any of the Defendants-Appellees – is the sender and, further, that the faxes do not advertise or benefit any of the Defendants-Appellees in any way. Accordingly, even if this case is remanded upon the current issues brought by Astro, remand will be futile and the

38

Amended Complaint would have to be dismissed as against all Defendants-Appellees because Astro has failed to properly allege the elements of a TCPA claim.

3. **The District Court Has No Personal Jurisdiction Over Defendants-Appellees JBlast and Barry Clark.**

Finally, the District Court had independent grounds to dismiss the Complaint as to each of JBlast and Barry Clark. Any arguments related to personal jurisdiction are reviewed *de novo*. *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.,* 385 F.3d 1291, 1296 (10th Cir. 2004).

To subject a foreign party to the jurisdiction of this Court, Astro must make a showing that asserting personal jurisdiction over JBlast or Mr. Clark would not run afoul of the Due Process Clause limits as set forth in the Fourteenth Amendment. *See Daimler AG v. Bauman,* 134 S. Ct. 746, 753-54 (2014); *sell also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72 (1985).

Courts in Colorado may exercise personal jurisdiction over a nonresident defendant if, and only if, the nonresident defendant had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *Int'l Show, Co. v. Wash.,* 326 U.S. 310, 316 (1945) (*quoting Miliken v. Meyer,* 311 U.S. 457, 463 (1940). A Colorado court can only assert jurisdiction upon an out of state defendant who "purposefully avails itself of the privilege of conducting activities within the forum

39

State, thus invoking the benefits and protections of its laws." *See J. McIntrye Machinery, Ltd. v. Nicastro,* 564 U.S. 873, 880 (2011) (quotations omitted).

A Colorado court could have power over a non-resident defendant if it has either general personal jurisdiction or specific personal jurisdiction over the party. Individuals are subject to general jurisdiction in the state in which they reside. *Daimler Ag.*, 571 at 138. For a business entity, a plaintiff must establish that a foreign party's contacts are "so continuous and systematic" so as to practically make the company "at home" in the forum state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011).

Specific jurisdiction, however, allows a party to be hailed to court for actions "aris[ing] out of" a defendant's contacts with the forum [state]." *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408 (1984); *see also Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1194 (Colo. 2005). Courts must ask "whether the defendant purposefully availed himself of the privilege of conducting business in the forum state, and…whether the litigation 'arises out of' the defendant's forum-related contacts." *Archangel,* 123 P.2d at 1194 (quoting *Burger King,* 471 U.S. at 472). The "purposeful availment" prong is not satisfied by "random, fortuitous, or attenuated contacts." *Id.* Moreover, "[t]he contacts must be established by the defendant himself" and *not* the "unilateral activity" of a third-party. *Rome v. Reyes,* 401 P.3d 75, 80 (Colo. App. 2017).

Importantly, a minimum contacts analysis focuses on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore,* 571 U.S. 277, 283-284 (2014). A defendant's relationship "with a plaintiff of a third-party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286. Once a party established that sufficient contact exists, courts then evaluate whether holding jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 323.

Here, JBlast and Mr. Clark are not subject to Colorado's jurisdiction by way of general personal jurisdiction. JBlast is a Delaware company (as admitted by Astro, App. Vol. 1, at 13, ¶ 7) and has no presence in the state (*see,* App. Vol. 30, at 8653-8654, ¶¶ 4, 8-11), and Mr. Clark is a California resident who does not visit Colorado often, or to solicit business in the state (*see,* App. Vol. 30, at 8653-8654, ¶¶ 5-7).

With regards to specific jurisdiction, Astro failed to plead sufficient facts that either JBlast or Mr. Clark had a substantial connection in Colorado. *See, Asahi Metal Indus. Co. v. Superior Ct. of C.A.,* 480 U.S. 102, 112 (1987), And, what is more, Defendants-Appellees are alleged to have sent the faxes to Florida, not Colorado. App. Vol. 1, at 13, ¶ 5. Astro has plainly failed to plead sufficient facts establishing personal jurisdiction over either JBlast or Mr. Clark. Accordingly, even if this case is remanded for an incorrect interpretation of defined terms under the TCPA, as to

41

each of JBlast and Mr. Clark, the Amended Complaint would have to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## C. THE DISTRICT COURT ACTED WITHIN ITS SOUND DISCRETION IN DENYING ASTRO'S MOTION TO RECONSIDER AND REFUSING LEAVE TO AMEND.

### 1. Standard of Review

Courts review rulings on motions to reconsider for an abuse of discretion. *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013); *see Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019). A court abuses its discretion when basing its decision on an erroneous legal conclusion. *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1005 (10th Cir. 2017).

### 2. Astro's Motion to Reconsider Failed to Meet the Standards Required for the Court to Reconsider its Dismissal Order.

Astro failed to preserve its argument regarding deference to an administrative agency by failing to properly raise the issue prior to entry of judgment. For a court to reconsider a prior ruling, the moving party must demonstrate that (1) an intervening change in the controlling law occurred, (2) there was discovery of new evidence that was previously unavailable, or (3) clear error or manifest injustice. *See, Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000). Motions to Reconsider are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id*.

Additionally, "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127–28 (2d ed. 1995)). Because Rule 59(e) cannot be used to raise arguments that could have been presented before judgment, Astro's arguments raised for the first time in its Motion to Reconsider (App. Vol. 30, at 8785-8799), were improper.

Astro's Motion to Reconsider was premised largely on arguments that could have been raised before judgment. Most notably, Astro did not argue during the motion to dismiss proceedings that the District Court was bound by the FCC's 2003 Order under the *Hobbs Act*. App. Vol. 30, beginning at 8785. It raised that theory only after the District Court issued its dismissal order. Likewise, the statutory-interpretation authorities and arguments Astro relied upon in its Motion to Reconsider were fully available during the original briefing. Because those arguments could have been presented before judgment, the District Court acted well within its discretion in declining to consider them for the first time on reconsideration.

Astro's *Hobbs Act* arguments are irrelevant in any event. App. Vol. 30, beginning at 8789. The District Court did not apply the *Hobbs Act* framework.

43

Rather, it independently interpreted the TCPA, considered the persuasiveness of the FCC orders/rulings, found that *Amerifactors* was most persuasive, and relied upon it only as confirmation of its textual analysis. App. Vol. 30, at 8761-8783. The District Court further explained that, even if it reconsidered, or were required to follow agency interpretations under *Hobbs*, which it was not, it still would not have been persuaded by the 2003 Order because it does not address online fax services like those implicated in this matter. *Id; see, supra*.

2.      Finally, despite Astro's arguments to the contrary, the Supreme Court's decision in *McLaughlin* provided no basis for reconsideration because it confirmed the same interpretive approach the District Court had already employed when construing 47 § U.S.C. § 227(a)(3). Specifically, *McLaughlin* reaffirmed that district courts must independently determine a statute's meaning using ordinary principles of statutory interpretation while giving appropriate respect to agency guidance. *McLaughlin,* 606 U.S. at 146. Because the District Court's dismissal order was already grounded in the TCPA's text and independently evaluated the FCC's guidance, *McLaughlin* did not materially alter the governing legal framework. App. Vol. 31, at 9042. The District Court therefore acted well within its discretion in concluding that *McLaughlin* provided no basis for reconsideration.

## X.    CONCLUSION

The District Court did not err in granting Mr. Matheson's Motion to Dismiss and applying its legal reasoning to the claims against all Appellees-Defendants. The District Court's interpretation of the TCPA statutes followed establish case law and its reliance upon *Amerifactors* as persuasive authority was proper and justified. Astro failed to state a claim under the TCPA because it is an online fax service and *not* a telephone facsimile machine as such term is defined under the TCPA.

Additionally, even if the District Court did err, such error would constitute harmless error and remand would be futile because the Amended Complaint would still be dismissed upon several independent grounds, including for lack of standing, failure to state a claim for relief under the TCPA, and as to two of the defendants – JBlast and Mr. Clark – for lack of personal jurisdiction.

Finally, the District Court properly denied the Motion to Reconsider because, in part, the Motion to Reconsider raised untimely arguments and failed to bring new evidence or law that was previously unavailable to it.

WHEREFORE, Defendants-Appellees Westfax, Inc., Duck Dive Communications, LLC dba JBlast, Barry Clark, and Chad Matheson, each respectfully and jointly request that: (i) Astro Companies, LLC's appeal and request for relief therein be denied, (ii) the District Court's Order on Mr. Matheson's Motion

45

to Dismiss and Order on the Motion to Reconsider be affirmed in full; and (iii) this

Appellate Court grant such other relief as may be just and proper.

## XI.   ORAL ARGUMENT

Defendants-Appellees respectfully request oral argument, as it will materially

aid the Court in deciding how to resolve this case.

Respectfully submitted,

**SPENCER FANE LLP**

By: *Joshua Dickinson*

Joshua C. Dickinson, KS Bar No. 20632
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
Facsimile: (816) 474-3216
jdickinson@spencerfane.com

Johanna R. Hyman, MN Bar No. 0397151
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 268-7009
jhyman@spencerfane.com
***Attorneys for Defendant-Appellee Chad Matheson***

**MONTGOMERY LITTLE & SORAN, PC**
*s/ James C. Taravella*
James C. Taravella, #55179
Nathan G. Osborn, #38951
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
T: (303) 773-8100
jtaravella@montgomerylittle.com
***Attorneys for Westfax, Inc.; Duck Dive Communications, LLC; and Barry Clark***

46

## XII.    CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,700 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in size 14 font, Times New Roman type style.

3.    This brief has also been scanned for viruses, is virus-free, and is filed in searchable, Portable Document Format.

4.    This brief was originally submitted on June 17, 2026, but is being resubmitted at the request of the Clerk of Court to comply with the requests in the Deficiency Notice issued June 18, 2026.

Dated: June 20, 2026          MONTGOMERY LITTLE & SORAN, PC

s/ *James C. Taravella*
James C. Taravella, #55179

**Attorney for Defendants-Appellees Westfax, Inc.; Duck Dive Communications, LLC; and Barry Clark.**

## XIII.    CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2026, the foregoing Defendant-Appellees' joint answer brief was re-filed per the request of the Clerk of Court and served to all parties of record via cmf/ecf and via email to counsel for any parties of record.

*s/ James C. Taravella*
James C. Taravella, #55179

***Attorney for Appellees Westfax, Inc.; Duck Dive Communications, LLC; and Barry Clark.***