No. 26-1066

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

Astro Companies, LLC
*Plaintiff-Appellant*,

v.

WestFax Inc, Duck Dive Communications, LLC, d/b/a JBlast,
Barry Clark, Chad Matheson, and John Does 1-10
*Defendants-Appellees*.

---

On Appeal from Order Granting Defendant's Motion to Dismiss, and Order
Denying Astro Companies, LLC Motion to Reconsider
U.S. District Court, Dist. of Colorado No. 23-cv-02328-SKC
The Honorable Kato S. Crews

---

**APPELLANT'S REPLY BRIEF**

---

Ross M. Good (Ross@thegoodlawgroup.com)
THE GOOD LAW GROUP
800 E. Northwest Highway, Suite 814
Palatine, IL 60074
(847) 577-4476 | Fax (800) 709-1179

*Attorney for Appellant*
Astro Companies, LLC

Oral Argument Requested

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 1

I.  Introduction to Argument ................................................................................ 1

II.  Pursuant to the plain language of the TCPA, Astro's equipment is protected from junk faxes. .................................................................................................................. 2

A.  Astro is not, contrary to Appellees' characterization, an "online fax service" that falls outside the statutory definition of "telephone facsimile service." ......................................... 3

B.  Dismissal pursuant to Section 12(b)(6) was improper because Astro has properly pleaded every element of the relevant statutory provisions. .................................................. 5

C.  The cases that have addressed the issue of whether online fax services fall within the TCPA definition of telephone facsimile machine have all been decided after extensive discovery. .................................................................................................................... 7

D.  The Statutory Text Is Unambiguous and Covers Astro's Equipment ............................ 9

E.  Notwithstanding their attempt to suggest a plain text reading of the statute is absurd, it is Appellees' reading of the statute that yields an "absurd result." ....................................... 11

III.  The District Court Abused its Discretion in Dismissing Astro's Motion to Reconsider, as its decision is internally inconsistent and runs contrary to governing law. .......................... 14

IV.  Appellees' Remaining Alternative Arguments are Unavailing. ..................................... 17

A.  Contrary to Appellees' assertion, Astro has standing to bring this action and Appellees were "senders" and "sufficiently involved in the creation of the junk faxes. ........................... 18

B.  As the District Court never ruled on personal jurisdiction, this Court is not in a position to rule on the issue. ..................................................................................................... 18

CONCLUSION ............................................................................................................. 19

STATEMENT OF REASONS FOR ORAL ARGUMENT ..................................................... 20

ADDENDUM — STATUTORY TEXT .............................................................................. 21

CERTIFICATE OF COMPLIANCE ................................................................................. 22

CERTIFICATE OF SERVICE ......................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ....................................................... 5

*Crooks v. Harrelson,* 282 U. S. 55, 60 (1930) .................................................................. 13

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) ............. 18

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ............................................ 12

*Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021) .................................................. 7, 10

*Marx v. General Revenue Corp.*, 568 U.S. 371 (2013) ..................................................... 11

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). .................... 8

*McLaughlin,* 606 U.S. at 150-55 ................................................................................... 15

*Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) ........................................... 17
*Palm Beach Golf Center*, 781 F.3d 1245, 1252 (11th Cir. 2015) .................................................. 18
*Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) ................................. 17
*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ....................................................... 15, 16
*Spokeo, Inc. v. Robins,* 578 U.S. 330, 341(2016) .................................................... 18
*True Health Chiropractic, Inc. v. McKesson Corp.*, No. 4:13-cv-02219-HSG (N.D. Cal.) ........... 8

**Statutes**

47 U.S.C. § 227(a)(3)................................................................................. 6, 10, 12, 22, 23
47 U.S.C. § 227(b)(1)(C) .............................................................................. 5, 11, 23

**Regulations**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 118 FCC Rcd.
14014 ¶201 ("2003 Commission Order") .................................................................. 12

**Legislative Materials**

H.R. Rep. No. 102-317 at 25 ................................................................................. 13

# GLOSSARY

2003 Commission Order — In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd 14014 (2003)

Amerifactors Bureau Ruling — In re Amerifactors Financial Group, LLC, Petition for Declaratory Ruling, 34 FCC Rcd 11950 (CGAB December 9, 2019)

FAC — First Amended Complaint (ECF No. 10)

FCC — Federal Communications Commission

CGAB — Consumer and Governmental Affairs Bureau of FCC

TCPA — Telephone Consumer Protection Act, 47 U.S.C. § 227

TFM — Telephone Facsimile Machine (as defined in 47 U.S.C. § 227(a)(3))

Ryerson Bureau Ruling — In re Joseph T. Ryerson & Son, Inc., Petition for Declaratory Ruling, DA-20-1038 (Chief, CGAB Sept. 4, 2020)

WestFax Ruling — In re WestFax, Inc. Petition for Consideration & Clarification, 30 FCC Rcd 8620 (CGAB Aug. 28, 2015)

## ARGUMENT

### I.    Introduction to Argument

As Plaintiffs explain in detail in their primary brief, Appellees have ignored the plain text of the TCPA prohibition on junk faxes and taken the liberty of rewriting it. The TCPA defines a telephone facsimile machine as equipment that "*has the capacity* . . . to transcribe text or images . . . from an electronic signal received over a regular telephone line onto paper." Yet, Appellees ask the Court to delete the words "has the capacity to transcribe" and substitute them with the words "actually transcribes." The language of the statute is plain and unambiguous, and to allow appellees – or a court – to alter them would thwart Congressional intent and lead to results that are utterly at odds with the legislative purpose: to protect against the harms caused by blasts of junk faxes.

Consistent with their attempt to rewrite the statute, Appellees have also taken the liberty, throughout this litigation, of mischaracterizing Astro as an online fax server that does not fit within the statutory definition. Appellees repeat this mischaracterization frequently throughout the brief despite uncontested sworn facts to the contrary, and the District Court has bought into the mistaken notion that there are only two kinds of fax servers, with no middle ground. Astro has labored mightily, to no avail, to explain throughout this litigation that it is not an "online fax server" akin to those that have been found to be outside the statutory definition.

1

Nevertheless, Appellees have not only rewritten statutory text but they have also perpetuated a narrative that immunizes them from liability to Astro simply because the junk fax blasts, though still creating the same harms addressed by the TCPA, are received by modernized technology.

As to Appellees' remaining arguments, it is impossible to reconcile, on one hand, Appellees' argument for deference to rulings by subordinate bureaus with, on the other hand, their attempt to ignore the only FCC ruling that warrants "appropriate" deference. Moreover, the District Court's rationales for denying Astro's Motion to Reconsider, despite significant flaws in its reasoning *and* a significant and material intervening change in the law, constitutes an abuse of discretion.

## II. Pursuant to the plain language of the TCPA, Astro's equipment is protected from junk faxes.

Appellees begin by incorrectly framing the issue as whether a recipient "online fax service" such as Astro qualifies as a telephone facsimile machine under the Telephone Consumer Protection Act ("TCPA"). (Appellees' Br. p. 14). Astro is not an online fax service, at least not as the term is understood by the District Court, but that is not really the issue. The issue is whether Astro's equipment satisfies the statutory definition of telephone facsimile machine. As such, even if Appellees' first argument – that the plain language of the TCPA does not cover "online fax services" as defined by the District Court – has merit, it is irrelevant to the issue at

2

bar: whether Astro's service is equipment that "has the capacity" to transcribe faxes onto paper.

### A. Astro is not, contrary to Appellees' characterization, an "online fax service" that falls outside the statutory definition of "telephone facsimile machine."

There is no factual support, either within or outside of the record, for finding that Astro is an "online fax service" as defined (quite broadly) by Appellees and the District Court. An online fax service, as defined by Appellees and the District Court, is a service that does not require a telephone line or related equipment; rather, it relies upon an internet connection to send and receive faxes through a digital portal or email. An online fax service, as described by Appellees and the District Court, allows the owner of the equipment to avoid the harms addressed by the TCPA – namely, the costs and inconvenience arising out of tied up phone lines and unnecessary printing. Astro is not such a service.

Appellees falsely assert that "[b]y Astro's own admission, the faxes that form the basis of its Amended Complaint were not sent to, or received by Astro on, a telephone facsimile machine as such term is defined under the TCPA." (Appellees Br. p. 11). In support of this assertion – which suggests, somewhat absurdly, that Astro would make an admission that is at odds with the core of its claim -- Appellees reveal that they are perpetuating their own misguided definition of "online fax service" and ignoring undisputed and sworn facts regarding the true

3

nature of Astro's service. Contrary to Appellees' assertion that Astro does not allege it uses manufactured hardware and is therefore an online fax service (Appellees' Br. p. 19), Astro is not, and has never been, an "online fax service" as Appellees would have the Court define it. Astro is not and has never been a subscriber to any online fax service and has explicitly stated that it is the owner of its own equipment and is the end user of the fax telephone numbers and receiving infrastructure at issue. (App. Vol. 1 at 15, Vol. 30 at 8759-8760; 8778). Astro is the subscriber for each phone line that was sent the faxes at issue in this case. (App. Vol. 1 at 15). Nevertheless, Appellees persist, and falsely assert that Astro is

> a cloud-based, web service. They are not accessed by customers, or by senders of documents via regular telephone lines. Its servers are located within the cloud and are accessed by other service providers using IP networking. These facilities are complex telecommunications facilities, not "regular telephone lines" and they do not get "tied up."

(Appellees' Br. p. 26, FN 4). Contrary to Appellees' citation, Appellees' description is not consistent with the description on Astro's website. There is nothing on the website to support Appellee's false suggestion that Astro magically receives faxes in "the cloud" without relying upon telephone lines that can be tied up. *See* https://astrocompanies.com/carrier-services/smartmail-fax/. Appellee's description has no basis in fact and is inconsistent with Astro's sworn statements described above.

4

As will be discussed in Section II.C., below, Astro's fax service, which has the "capacity" to transcribe faxes to paper, is a "telephone facsimile machine" under the TCPA.

**B. Dismissal pursuant to Section 12(b)(6) was improper because Astro has properly pleaded every element of the relevant statutory provisions.**

The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The statute defines "telephone facsimile machine" as:

> *equipment* which has the *capacity* — (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line; or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

47 U.S.C. § 227(a)(3)  (emphasis added).

On a Rule 12(b)(6) motion, the district court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences in [Astro's] favor." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Astro need only allege facts sufficient to make a plausible claim. *Iqbal*, 556 U.S. at 678. Section 227(a)(3)(B) has three elements: (1) "equipment"; (2) that has "the capacity to transcribe text or images (or both)"; (3) "from an electronic signal received over a regular telephone line onto paper." Astro's sworn allegations

5

satisfy each element with particularity. *See* App. Vol. 30 at 8760; App. Vol. 1 at 15. These three sworn allegations track every element of § 227(a)(3)(B). Astro's sworn allegations are specific, unrebutted, and required to be accepted as true. Nothing more is required at the pleading stage.

Nevertheless, Appellees assert that "[e]ven if the Court *were* to isolate the terms "equipment" and "capacity" in the definition, dismissal is warranted because Astro never identifies with any specificity what its "equipment" is (other than vaguely referring to servers and telecommunications systems) nor does Astro allege facts to establish that its alleged equipment has the present capacity to transcribe signals it receives onto paper. (Appellees Br. p. 20). Appellees cite to no authority, nor is there any, for the proposition that Astro would have had to plead what is essentially proof for the entire case in their Amended Complaint. For purposes of a Motion to Dismiss, Astro was not required to plead facts beyond those that support the elements described above. The details sought by Appellees are matters for discovery and need not, and should not, be hashed out at this stage of the litigation. Appellees are simply searching for and inventing facts that might support their flawed narrative about the statute's breadth and Astro's equipment. Ultimately, Appellees' entire argument is outside the scope of a 12(b)(6) motion to dismiss, as it raises fact-intensive issues that can only be resolved after discovery.

6

**C. The cases that have addressed the issue of whether online fax services fall within the TCPA definition of telephone facsimile machine have all been decided after extensive discovery.**

As Astro explained in its primary brief, both circuits that had addressed the issue of whether a particular fax server qualifies as a "telephone facsimile machine" reached their conclusions only after full factual development via extensive discovery. Both recognized that there are not only two choices, a stand-alone fax machine or an online fax service, and a determination of whether a plaintiff's equipment is covered is fact-dependent. (Appellant's Br. p. 28-29). To reiterate briefly, the Sixth Circuit, holding that the definition of "telephone facsimile machine" is unambiguous and "encompasses more than a traditional fax machine," found that the computers at issue fell within the definition. *Lyngaas v. Curaden AG*, 992 F.3d 412, 427 (6th Cir. 2021) Though the Fourth Circuit reached a different result, that case was decided after eight years of litigation and summary judgment. *Career Counseling, Inc. v. AmeriFactors Financial Group, LLC*, 91 F.4th 202 (4th Cir. 2024). The pivotal fact underlying the finding in *Career Counseling* that the equipment was not covered in that case, that the plaintiff subscribed to a third-party eFax service and received faxes as email, was established through discovery, not by the defendants' wishful invention. Here, the District Court improperly applied *Career Counseling's* summary-judgment stage factual findings to a Rule 12(b)(6) motion.

Since the filing of Appellees' brief, a post-remand decision was issued on *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). After the Supreme Court remanded the matter for "appropriate consideration" of FCC rulings[1], a California district court denied Plaintiffs' renewed motion for class certification, finding that the particular "online fax service" for certain putative class members did not fall within the statutory definition of telephone facsimile machine; importantly, that court did not find the named plaintiff was an "online fax service" based on the discovery record in that matter. *True Health Chiropractic, Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG, slip op. (N.D. Cal. May 22, 2026). Like *Lyngaas and Career Counseling,* that matter had already gone through extensive discovery, and the court's determination was dependent on specific facts regarding the plaintiffs' equipment. *Id.* Emphasizing how intensely fact dependent the decision was, that court went on to acknowledge that there may well be some "other service in between" an online fax services and a stand-alone traditional fax machine. *Id.* at 2, FN 1. Here, the District Court failed to recognize this possibility, and appeared to assume equipment falls into only two categories – only one of which falls within the definition. This notion of a binary choice is a fallacy. More

---

[1] The Supreme Court declined to address the more fact-based issue of whether the plaintiffs' equipment was covered by the TCPA.

importantly, that court demonstrates the need to conduct discovery prior to making a determination which the District Court precluded with the decision at issue.

### D. The Statutory Text Is Unambiguous and Covers Astro's Equipment

Appellees' argument rests upon the legally untenable theory that a "fair reading" of the TCPA's definition of "telephone facsimile machine" requires the Court to ignore a literal reading of its plain text. (*See* Appellees' Br. p. 18) (Appellees posit that "[i]f a 'telephone facsimile machine' is 'equipment' with the 'capacity to transcribe text or images' onto paper but is distinct from a 'computer or other device,' as discussed above, then the equipment utilized by a 'telephone facsimile machine' cannot also be a 'computer or other device.'"). Appellee's position collapses in on itself.

There is no need to reiterate herein the basic rules of statutory construction beyond emphasizing that statutory interpretation begins and often ends with the plain language. (Appellant's Br. p. 13-15). As Astro explained in detail in its primary brief, the District Court, at Appellees' urging, imported the word "machine" from the phrase "telephone facsimile machine" — the term being defined — into the definition itself, then used a dictionary definition of "machine" to exclude Astro's servers. (App. Vol. 30 at 8778-8779.)  But the word "machine" does not appear anywhere in § 227(a)(3). Also, according to Appellees' novel interpretation of statutory construction, the District Court had license to edit the

9

unambiguous text of the statute's definition of "telephone facsimile machine" to require that the equipment *actually print* faxes rather than simply *have the capacity* to do so.

Appellees now compound the error by inserting other imagined words into the statute, asserting that the offending fax "must be sent to and received on a "telephone facsimile machine" *and not on a "computer or other device."'* (Appellees Br. p. 16). Consistent with its unambiguous definition of "telephone facsimile machine" and Congress's unambiguous focus, in the legislative history, on the nature of the harm the statute was designed to protect against,[2] the TCPA does not (and could not, as a matter of logic) provide that the offending fax is no longer offensive simply because it is or can be received on a computer or other device. The Sixth Circuit recognized this distinction as dispositive: "The statutory definition…encompasses more than a traditional fax machine. Notably, it does not require the actual printing of the advertisement." *Lyngaas v. Curaden AG*, 992 F.3d 412, 427 (6th Cir. 2021).

The District Court invoked *expressio unius est exclusio alterius* to argue that because § 227(b)(1)(C) lists computers and other devices as potential senders but mentions only "telephone facsimile machines" as recipients, Congress meant to

---

[2] Astro refers the Court to its detailed discussion of the legislative history and Congress's purpose, revealed unambiguously in the text. (Appellant's Br. p. 19-21).

limit recipients to traditional fax machines. (App. Vol. 30 at 8778, 8779.) That canon is inapplicable here. *Expressio unius* "does not apply if there are contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion." *Marx v. General Revenue Corp*., 568 U.S. 371, 380 (2013) (citations omitted). The "contrary indication" here is in the statute itself: § 227(a)(3) defines 'telephone facsimile machine' as 'equipment' with the relevant capacity. Given technological advances since the TCPA's 1991 enactment, limiting its protections to only those who still use stand-alone fax machines would render the TCPA, and the harms it was enacted to address, irrelevant.

### E. Notwithstanding their attempt to suggest a plain text reading of the statute is absurd, it is Appellees' reading of the statute that yields an "absurd result."

As Astro explained in its primary brief, the legislative History and the absurd-results canon confirm coverage. According to Appellees' theory, fax recipients would only be able to get relief under the TCPA if their equipment resembles some version of the now-antiquated stand-alone commercial fax machines. For better or for worse, technology marches on, and Congress recognized this when it enacted the TCPA. The FCC expressly identified the need to account for developing technologies in its 2003 Order:

> The TCPA's definition of 'telephone facsimile machine' broadly
> applies to any equipment that has the capacity to send or receive text
> or images. The purpose of the requirement that a 'telephone facsimile
> machine' have the 'capacity to transcribe text or images' is to ensure

that the prohibition on unsolicited faxing not be circumvented. Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines.

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 118 FCC Rcd. 14014 ¶201 ("2003 Commission Order"). Given this expressed concern and the clear intent of Congress to protect against the harms associated with junk faxing, Appellees' concern with the possibility that the TCPA could "even" cover smart phones is misplaced. (*See* Appellees' Br. p. 21). Again, the issue would be fact intensive and incapable of resolution in a 12(b)(6) Motion to Dismiss. The key is not the form the equipment takes but rather how a blast of junk faxes would affect the owner of the equipment and, significantly, whether that equipment has the "capacity" to transcribe faxes onto paper.

Appellees are somewhat correct when they quote *Griffin v. Oceanic Contractors* to assert that courts "avoid interpretations that produce absurd results when a contextually sound alternative is available." Appellees' Br. p. 21, *citing Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). To be entirely accurate, what that Court stated was interpretations that produce absurd results "are to be avoided when alternative interpretations consistent with the legislative purpose are available." *Griffin,* 458 U.S. at 575. As already discussed, there is no alternative interpretation of the unambiguous statutory language that is consistent

12

with the legislative purpose: to protect recipients from blasts of junk faxes.

Appellees conveniently neglect to mention that Court's caveat, in the next

sentence, about courts meddling with statutory language. *Griffin*, 458 U.S. at 575

*citing Crooks v. Harrelson,* 282 U. S. 55, 60 (1930). ("Laws enacted with good

intention, when put to the test, frequently, and to the surprise of the law maker

himself, turn out to be mischievous, absurd or otherwise objectionable. But in such

case the remedy lies with the law making authority, and not with the courts.")

The absurd-results canon independently forecloses the District Court's

reading. Under the court's holding, WestFax could send 8,579 junk faxes to a

hospital's fax server, consuming all available server capacity and blocking time-

sensitive patient care communications for hours due to tied up phone lines, with

complete TCPA immunity, simply because the hospital does not use a standalone

machine. Congress enacted the TCPA to prevent precisely this harm. H.R. Rep.

No. 102-317 at 25. The District Court's interpretation does not limit the TCPA, it

eviscerates it. As Astro explained in its primary brief, the TCPA is a remedial

statute whose terms "should be construed in accordance with [its consumer-

protective] purpose." (*See* Appellant's Br. p. 21). Even setting aside the plain text,

both the legislative history and the absurd-results canon confirm coverage, and any

residual ambiguity must be resolved in Astro's favor. *Id.* (*citations omitted*).

### III. The District Court Abused its Discretion in Dismissing Astro's Motion to Reconsider, as its decision is internally inconsistent and runs contrary to governing law.

It is impossible to reconcile the District Court's deference to rulings from subordinate Bureaus with their failure to defer to the 2003 Commission Order, the only Ruling warranting "appropriate deference." Pursuant to that Order, Astro's equipment, though modernized, falls squarely within the definition of telephone facsimile machine in the TCPA. (*See* Section II.E., above).

An understanding of the timeline is instructive here. On February 12, 2025, the District Court granted Appellees' Motions to Dismiss. App. Vol. 30 at 8774, 8783. On March 7, 2025, Astro filed its Motion for Reconsideration of the District Court's decision. App. Vol. 30 at 8785. On June 20, 2025, while Astro's Motion for Reconsideration was pending, the Supreme Court handed down its decision in *Mclaughlin Chiropractic Assocs. v. Mckesson Corp.*, 606 U.S. 146 (2025). On June 30, Astro filed a Notice of Supplemental Authority advising the District Court of the *McLaughlin* decision and requested leave to file either a renewed motion for reconsideration or an amended complaint consistent with that intervening authority. (App. Vol. 31 at 8995). On February 9, 2026, the District Court denied reconsideration. (App. Vol. 31 at 9040).

In denying Astro's Motion for Reconsideration more than eight months after the Supreme Court clarified the law regarding agency deference, the District Court

14

asserted it had conducted a proper independent statutory interpretation, it had not relied upon the *Amerifactors* bureau ruling as binding, and that Astro's statutory arguments should have been raised in the original motion to dismiss. Addressing Astro's Notice of Supplemental Authority, the District Court stated (erroneously) that Astro had cited to no intervening change in controlling law. *Id.* Perhaps seeking to bolster its flimsy dismissal of any intervening change in law, the court denied the request for leave to file a renewed motion or amended complaint on procedural grounds, stating such a request should be made by separate motion. (App. Vol. 31 at 9043).

Before *McLaughlin*, the Hobbs Act channeled TCPA challenges through the courts of appeals exclusively. As such, the relevance of the FCC's 2003 Order to district court proceedings was, at best, unclear. *McLaughlin* changed that by directing district courts to conduct an independent *Skidmore* analysis[3] of FCC pronouncements, affording *appropriate respect* to agency rulings based on their power to persuade. *McLaughlin,* 606 U.S. at 150-55 (emphasis added). The significance of the 2003 Commission Order crystallized only when *McLaughlin* was decided. Appellees suggest that because the District Court independently interpreted the TCPA (theoretically in violation of the Hobbs Act at the time), and because the District Court stated it would not have been persuaded

---

[3] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

by the 2003 Commission Order, Astro's arguments on reconsideration are irrelevant. (Appellees' Br. p. 44). Appellees mistakenly assert that *McLaughlin* would have sanctioned the District Court's analysis anyway because *McLaughlin* did not materially alter the governing legal framework. *Id.*

"The power to persuade," pursuant to the Supreme Court's decision in *Skidmore,* depends primarily upon the thoroughness of a ruling, the validity of the reasoning, and its consistency with other rulings. *Skidmore,* 323 U.S. at 140. As explained in Astro's primary brief, the only ruling entitled to "appropriate respect" is the 2003 Commission Order issued by the full FCC – an order not even mentioned by the district court. (Appellant's Br. pp. 24-25). As such, it was incumbent upon Astro to raise it after *McLaughlin* was decided. By contrast, the subordinate Bureau rulings relied upon by the District Court do not arise out of the thorough rulemaking process followed by the full Commission, they lack valid reasoning, and they directly contradict the FCC's 2003 order. Moreover, in 2015, the full FCC issued a final ruling against Appellee Westfax on this very issue. Lastly, as explained in Astro's primary brief, the narrow carve-out in the TCPA excluding from protection "facsimile messages sent as email over the Internet" does not apply to Astro. (*See generally* Appellant's Br. pp. 25-26).

Appellees suggest Astro improperly raised the 2003 Commission Order for the first time in its Motion for Reconsideration, asserting it was barred as a new

argument. (Appellees' Br. p. 43). Contrary to Appellees' suggestion, Astro did not impermissibly attempt to take a second bite of the apple in raising the 2003 Commission Order when it did, and the District Court abused its discretion in denying Astro's Motion to Reconsider on those grounds.

An "intervening change in controlling law" is a valid ground for reconsideration. *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019). In *Paraclete,* this Court clarified that Rule 59(e) motions cannot be used to revisit old arguments or advance new arguments that could have been presented in the original briefing. *Id.* It is unclear how Astro could have raised arguments developed in and decided in *McLaughlin* before that case was decided. Though Astro may have been aware of the pending litigation, it had no way of anticipating what the outcome would be, and arguing the issues while the Supreme Court was considering them would have been pointless and premature.

### IV.    Appellees' Remaining Alternative Arguments are Unavailing.

As an alternative to their attempt to rewrite the statute and pigeon-hole Astro's equipment into an inaccurate description of its fax service absent any discovery, Appellees raise a handful of other arguments, all of which are unavailing, particularly for purposes of evaluating the District Court's granting of

Appellees' Motion to Dismiss, without prejudice, and its denial of Astro's Motion to Reconsider.

### A. Contrary to Appellees' assertion, Astro has standing to bring this action and Appellees were "senders" and "sufficiently involved" in the creation of the junk faxes.

As the subscriber to the telephone lines and owner operator of the servers that received the junk fax signals, Astro is, contrary to Appellees' assertion, the "recipient" of the faxes and has standing under the statute. (*See* App. Vol. 1 at 15, App. Vol. 30 at 8759–8760). The harm sought to be protected by the TCPA is the occupation of telephone lines and equipment and not the content of what customers ultimately receive. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 341(2016); *see also Palm Beach Golf Center*, 781 F.3d 1245, 1252 (11th Cir. 2015) (holding that the occupation of a fax line is a concrete TCPA injury even if fax is deleted unread). Astro, not its customers, is the party suffering the injury.

### B. As the District Court never ruled on personal jurisdiction, this Court is not in a position to rule on the issue.

The District Court simply denied the WestFax Motions to Dismiss as moot, as it only ruled on the Motion brought by Defendant Matheson. (App. Vol. 31 at 9040). Appellate courts should not affirm on undeveloped factual records. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (a prima facie showing on undisputed allegations is sufficient to

establish personal jurisdiction). As Astro alleged in its Amended Complaint, JBlast operates "exclusively through WestFax's Colorado infrastructure" and Clark is WestFax's sole shareholder directing Colorado-based operations. (App. Vol. 1 at 15–16). If the panel chooses to reach this issue, remand for jurisdictional discovery is the proper remedy.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Astro Companies, LLC respectfully requests that this Court:

(1) Reverse the District Court's orders granting Defendants' motions to dismiss (App. Vol. 30 at 8774, 8783) and denying reconsideration (App. Vol. 31 at 9040.)
(2) Remand with instructions to permit Astro to conduct discovery on the telephone facsimile machine question; and
(3) Grant Astro leave to file an amended complaint consistent with *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025).

Respectfully submitted,

/s/Ross M. Good
Ross M. Good, Esq.
The Good Law Group
800 E. Northwest Hwy, Suite 814
Palatine, IL 60074
Phone: (847) 600-9576
Email: ross@thegoodlawgroup.com
Dated: July 13, 2026

**Attorney for Plaintiff Astro Companies, LLC.**

19

## STATEMENT OF REASONS FOR ORAL ARGUMENT

Oral argument would materially assist the Court in resolving this appeal. This case presents questions of first impression in the Tenth Circuit: (1) the proper interpretation of 47 U.S.C. § 227(a)(3)'s definition of "telephone facsimile machine" as applied to modern fax server infrastructure, an issue on which the Sixth and Fourth Circuits have reached different results; and (2) the proper application of the *McLaughlin*/*Skidmore* "appropriate respect" framework to competing FCC rulings of different institutional pedigrees. The factual record, including the significance of Astro's sworn technical declarations, would also benefit from focused questioning.

Argument time requested: 15 minutes per side.

**ADDENDUM — STATUTORY TEXT**

**47 U.S.C. § 227(a)(3) — Definition of "Telephone Facsimile Machine"**

The term "telephone facsimile machine" means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

**47 U.S.C. § 227(b)(1)(C) — Prohibition on Unsolicited Fax Advertisements**

It shall be unlawful (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement…

21

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **4,424** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman in 14-point size.

*/s/Ross M. Good*
Ross M. Good, Esq.
The Good Law Group
800 E. Northwest Hwy, Suite 814
Palatine, IL 60074
Phone: (847) 600-9576
Email: ross@thegoodlawgroup.com

**Attorney for Plaintiff Astro Companies, LLC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2026 I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Tenth Circuit using the CM/ECF system, which will send notification of such filing to all registered counsel of record.

/s/Ross M. Good
Ross M. Good, Esq.
The Good Law Group
800 E. Northwest Hwy, Suite 814
Palatine, IL 60074
Phone: (847) 600-9576
Email: ross@thegoodlawgroup.com

**Attorney for Plaintiff Astro Companies, LLC.**

23